UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  04-60573-CIV-MORENO**

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MUTUAL BENEFITS CORP., *et al.*,

    Defendants,

VIATICAL BENEFACTORS, LLC, *et al.*,

    Relief Defendants.
_____/

## AMENDED ORDER GRANTING RECEIVER'S MOTION TO APPROVE SALE OF POLICY AP#99-0007778

On March 11, 2008, Roberto Martínez, court-appointed receiver, requested this Court to approve the proposed sale of a certain insurance policy issued by New York Life Insurance and Annuity Corporation (designated by MBC as Policy AP# 99-0007778 and which has a policy number from the issuing insurance company ending in digits "4487") for a total of $8,850,000.

On March 17, 2008, the Court granted the Receiver's Motion to Approve Sales of Policies. On March 20, 2008, Credit Suisse Securities Limited filed an Emergency Motion for Reconsideration of the Order, representing that it was prepared to pay $9,500,000 for the Policy on the same terms and conditions as reflected in the Sale Motion.  On March 20, 2008, the Court entered an Order Granting Emergency Motion for Reconsideration in Part and also entered an Order Staying Order Granting Motion to Approve Sale of Policies.

The Court conducted oral argument on the Reconsideration Motion on March 31, 2008, at which time the Court: (1) advised that it would not approve the sale of the Policy to Silver Point for $8,850,000, in light of the higher offer received from Credit Suisse; (2) directed the Receiver to conduct a further auction of the Policy commencing at 8:00 a.m. on April 1, 2008, at which Silver Point and Credit Suisse could each submit further bids; (3) advised that it would be prepared to award Silver Point its reasonable fees and costs incurred in connection with the transaction in the event that Silver Point was not the successful bidder; and (4) directed Silver Point to communicate to the Receiver the amount of fees and costs it had incurred by 7:00 p.m. on March 31, 2008. The Court set a further hearing on April 1, 2008 at 11:00 a.m. for the Receiver to report on the results of the further bidding process.

At the hearing on April 1, 2008, the Receiver, through counsel, proffered to the Court that it had conducted a further auction with respect to the Policy. Multiple further bids were submitted by both Silver Point and Credit Suisse with the highest bid being submitted by Silver Point in the amount of $10,250,000.

This Court has considered the Sale Motion, the attached Asset Purchase Agreement, the Amendment No. 1 to the Asset Purchase Agreement reflecting Silver Point's modified bid (Exhibit "A"), the representations of the Receiver, and the Court approves.

Further, the Court finds that the auction process directed by the Court, and completed by the Receiver on April 1, 2008, was fair, reasonable, and appropriate, and gave each interested party an opportunity to submit its highest and best bid for the Policy. The Court finds that the highest bid of $10,250,000 should be approved. Accordingly, it is

**ORDERED** as follows:

The sale of the Policy to Silver Point for $10,250,000 pursuant to the Purchase Agreement is approved in accordance with the terms of this Order and consistent with the prior order approving the sale at the lesser amount which is incorporated into this order, save for the purchase amount.

The sale of the Acquired Assets to Buyer in accordance with the terms of the Purchase Agreement is approved. Without limiting the generality of the foregoing, the Receiver is authorized to: (I) execute and deliver, and is empowered to perform under, consummate and implement, the Purchase Agreement and any additional instruments or agreements or documents that may be reasonably necessary or desirable to implement the Purchase Agreement; (ii) take all further actions as may be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer and its assigns and designees, or reducing to possession, the Acquired Assets; and (iii) timely comply with all of its obligations under the Purchase Agreement and any such additional instruments, agreements or documents. Any objection to such sale which has not been withdrawn is hereby overruled on its merits.

The transfer of the Acquired Assets will be a legal, valid and effective transfer of the Policy and other Acquired Assets and will vest Buyer or its assignee or designee, if applicable, with good and valid title and all right, title and interest in and to the Acquired Assets. At the Closing, Buyer or its assignee or designee, if applicable, will be vested with all claims, options, privileges, right, title and interest in, to and under the Acquired Assets, free and clear of all Encumbrances (as defined in the Purchase Agreement). Any person, including, without limitation, any creditor of or investor in the Receivership Entities, any beneficial interest holder or other holder of the Policy and any insurance company or other entity which issued or is obligated under the Policy and the successors and assigns of any of the foregoing, asserting or having an Encumbrance of any kind or nature

against or in any Receivership Entity or the Acquired Assets arising out of, in connection with, or in any way relating to the Receivership Entities, the Policy or other Acquired Assets, or the transfer thereof to Buyer and its successors and assigns, shall be, and hereby are, forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Encumbrance against Buyer and its successors and assigns or any subsequent owner of the Acquired Assets.

From and after the Closing (as defined in the Purchase Agreement), Buyer and any subsequent owner of the Policy are deemed to be designees of Horizon Life Solutions Inc. under that certain Authorization for Release and Use of Medical and/or Insurance Information that was executed by the insured under the Policy on July 24, 2003, and (ii) shall have the right to obtain updated medical information from time to time regarding the insured/viator under the Policy including (a) pursuant to 45 C.F.R. § 164.512(e)(1)(I), all health care providers who are served with a copy of this Sale Order and a written request by Buyer or any subsequent owner of the Policy shall be authorized and compelled to immediately release copies to Buyer or any subsequent owner of the Policy, as the case may be, of all records relative to the care, treatment and health of the insured/viator under the Policy so requested by Buyer or such subsequent owner thereof, as the case may be, for the purpose of monitoring health and predicting life expectancy, and (b) the insured/viator under the Policy being required to provide Buyer and any subsequent owner of the Policy with contact information for such insured/viator, Health Insurance Portability and Accountability Act of 1996 compliant medical authorizations, contact information for all physicians or other medical providers who have treated such insured/viator since December 31, 2000, and any and all medical information generated since December 31, 2000 pertaining to such insured's/viator's health and medical condition, and Buyer or any subsequent owner of the Policy shall be entitled to

seek enforcement of this provision as to any person, including by way of example, and not limitation, an application for a finding of contempt.

This Sale Order and the Purchase Agreement shall be binding in all respects upon all creditors of the Receivership Entities, any investor in the Receivership Entities, any beneficial interest holder or other interest holder of the Policy, any insurance company or other entity which issued or is obligated under the Policy, and any other party in interest in the Receivership Proceeding and any of the successors or assigns of the foregoing.

The Purchase Agreement and any related agreement, document or other instrument may be modified, amended or supplemented by parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further notice or order of this Court, provided that any such modification, amendment or supplement does not constitute a material modification of the Purchase Agreement.

This Court retains jurisdiction to enforce and implement the terms of the Purchase Agreement, including to resolve any disputes arising under any Purchase Agreement, and to interpret, implement, and enforce the provisions of this Sale Order.

This Sale Order constitutes an interlocutory or a final judgment in a receivership action and thus this Sale Order shall become effective immediately upon its entry as provided in Rule 62(a) of the Federal Rules of Civil Procedure.

The provisions of this Sale Order are non-severable and mutually dependent.

DONE AND ORDERED in Chambers at Miami, Florida, this 3 day of April, 2008.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record