UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 04-60573-CIV-MORENO

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

vs.

MUTUAL BENEFITS CORP., *et al.*,
    Defendants,

VIATICAL BENEFACTORS, LLC, *et al.*,
    Relief Defendants.

_____/

**ORDER REQUIRING DISTRIBUTION TO
INVESTORS AND GRANTING ATTORNEYS' FEES FROM
UNCLAIMED INVESTORS' FUND AND MBC OPERATING ACCOUNT**

THIS CAUSE came before the Court upon the Receiver's Application for Final Fee Award and the Pre-Closing Purchase Escrow Plaintiffs' Motion for Instructions.

*Background*

For five-and-a-half years, the Receiver and two law firms, Colson Hicks Eidson and Kozyak Tropin Throckmorton, have labored in and out of the courtroom on behalf of defrauded investors in this action brought by the Securities and Exchange Commission for violations of securities laws by Mutual Benefits Corporation. Mutual Benefits Corporation and its principals sold unregistered securities and made fraudulent representations in the sale of life insurance policies. The SEC concedes that the Receiver's counsel has worked diligently and efficiently in this complex matter, and has successfully protected and maximized assets in the receivership estate for the benefit of defrauded investors.

For their work for more than five years, the two law firms have so far received $3.8 million. The Colson Hicks firm has received $2.47 million for the period, which averages to $449,000 per year at a "blended"[1] billing rate of $218 per hour. The Kozyak Tropin firm has received $1.4 million over the five-and-a-half years, which averages to $254,000 per year at a "blended" billing rate of $264 per hour. The Receiver and his counsel seek a final fee award of an additional $11 million. The SEC objects and asks the Court to "congratulate Receiver's counsel on a job well done" but not to pay additional fees at the expense of the investors. The Court finds that $218 per hour and $264 per hour for the attorneys is substantially below a reasonable rate, and the Court will grant additional attorneys' fees.

### *Nature of Representation*

The Court finds, and the SEC agrees, that the attorneys for the Receiver provided exceptional services for the benefit of investors. The SEC contends, however, that undertaking this receivership should be an act of pure public service. The Court recognizes that it has arbitrarily reduced the interim fee requests submitted by the Receiver's counsel, holding off until there was a final resolution of the receivership. That time has come.[2] In assessing the work done by counsel, the Court notes that this receivership was indeed unique, requiring work and expertise beyond the typical litigation to simply recover funds from third parties.

In this case, the Receiver and his counsel administered over 7,000 insurance policies with a face value of $1.5 billion, disposed of policies after the Court gave investors a choice to continue

---

[1] The "blended" rate incorporates both partner and associate rates.

[2] The Eleventh Circuit Court of Appeals dismissed the intervening insurers' claim in 2007 and, on November 24, 2009, dismissed the intervening insurers' appeal of this Court's order regarding the sale of insurance policies. Thus, there is now no longer any litigation pending regarding the receivership.

paying the premiums, processed claims after the deaths of insureds, and preserved assets to continue the legitimate work of assuring that policies would not lapse for lack of payment, etc. All this work was done in addition to "offensive" and "defensive" litigation in state and federal courts, including the Eleventh Circuit Court of Appeals and regulatory agencies. Litigation, criminal investigation, policy administration, and investor frustration reached the point of death threats being made against the Receiver himself. No wonder the SEC is complimentary of the legal work done by the Receiver and his counsel in this unique case.

### *Availability of Funds and Reasonableness of Attorneys' Fees*

The Receiver and his counsel have recovered millions of dollars that the investors would not have recovered but for the excellent work of the law firms. The Receiver's Asset Recovery Pool has $117.5 million to distribute. In addition, there is approximately $4 million in the Mutual Benefits Corporation operating account and $3.8 million in the Pre-Closing Purchase Escrow account that have not been claimed. There is no dispute as to the value of the enhancement of recovery as detailed in the Receiver's motion for attorneys' fees. There is a dispute, however, between the SEC and the Receiver as to what adequate compensation should be.

On October 12, 2009, the Daily Business Review published a South Florida Billing Survey indicating that the most talented attorneys in the area billed between $550 and $765 per hour. This is, to put it simply, a lot of money to a United States District Judge making $172,000 a year or to a dedicated SEC attorney making even less. But we chose gladly to become public servants. On the other hand, the Receiver was "asked"by the Court to undertake the litigation, asset management, policy administration, claim process, payment of policies, security concerns, establishment of a web page, etc., all of which has unexpectedly lasted five-and-a-half years. Undertaking this receivership was not sought by the Receiver, and no one contemplated the extended and complex nature of this

case. Few would disagree that, in complex matters, you get what you pay for. A receivership with available funds should be no different.

As noted, in addition to the funds in the Mutual Benefits Corporation operating account and the Asset Recovery Pool, there are $3.8 million in the Pre-Closing Purchase Escrow account that have not been claimed. These Pre-Closing Plaintiffs retained Thomas Tew of the Tew Cardenas law firm and, because of the excellent, albeit brief, legal representation provided and because the fraud was discovered prior to the expected closings, recovered 100% of their investments. For its excellent legal work, the Tew Cardenas law firm received a well-deserved $1.5 million. It would be inequitable to distribute these funds to these "lucky" pre-closing investors who have already recovered 100% of their investments while the other, post-closing investors recover only 23% of their investments. It would also be unfair to further compensate the Tew Cardenas law firm, nor is that firm seeking further compensation. In fact, Mr. Tew recognized in open court the excellent results obtained by the Receiver on behalf of the post-closing investors who are recovering much less than his clients. Furthermore, the Court finds that the additional administrative expense of providing a windfall to these 100% recovery Plaintiffs would not be justified. Thus, the Court orders that these unclaimed funds be used to pay the Receiver and his counsel.

Having ordered that approximately $3.8 million in pre-closing unclaimed funds be paid to the Receiver's attorneys, the Court must next decide whether the attorneys are entitled to more. The initial award of approximately $3.8 million does not diminish the amount of funds available to the post-closing investors who will receive approximately 23% of their investments.[3] An additional award beyond the approximately $3.8 million to the attorneys will indeed diminish the recovery to

---

[3] Investors who elected to continue to pay premiums should recover 13% plus the amount they will collect upon the death of an insured.

such investors, albeit only minimally when divided by each individual investor.

The question of what constitutes a reasonable final attorneys' fee must still be answered. Both the SEC and the Receiver agree that this is not a typical common fund case. Hence the identical legal analysis employed in *Camden I Condominium Association, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) need not be followed. Yet many of the factors considered in *Camden I* can be considered in the Court's exercise of its discretion in awarding reasonable attorneys' fees. In this case, the uniqueness and complexity of the issues required lawyers with substantial skill, expertise, and tenacity, and it is undisputed that the lawyers' excellent representation enhanced the asset pool of funds to be distributed. Under these facts, these great lawyers did make a difference, and they should be compensated at a rate higher than $218 or even $264 per hour.

On the other hand, as the Receiver concedes, the Court wrote in *Walco Investments, Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997), that "the presence of a consistently paying client for four years, even at a reduced hourly rate, would warm the heart, let alone the pocketbook, of even the most successful securities litigator." Therefore, the Court must consider the good results obtained as a result of the attorneys' great work, but at a rate less than the $550 to $765 being paid by clients in the free market in South Florida.

Balancing these factors, the Court believes that $450 per hour is a reasonable rate in this case in the Southern District of Florida. At $450 per hour, the total compensation for 18,740 hours should be $8,433,000. The Receiver's motion states that the Receiver's lawyers have already been paid $3,876,081. Thus, the Receiver's lawyers shall be entitled to an additional award of $4,556,919 for its work through April 2009. Moreover, because the 18,740 hours worked by the law firms do not include work past April 2009, the Court will grant attorneys' fees for the work done after April 2009.

At a total of $8,433,000 for sixty months of work (the Receiver was appointed in May 2004), the average monthly fees for the Receiver's attorneys are $140,550. At that rate, the Receiver's attorneys should be entitled to an additional $983,850 through December 2009. The Court recognizes, however, that the attorneys' workload was considerably lighter during these past seven months than it was during earlier months. The Court also realizes that the Receiver's attorneys will likely be doing work beyond December 2009 to finalize the distribution of funds to the investors. Accordingly, the Court finds that an additional $500,000 is reasonable for work done by the Receiver's attorneys from May 2009 through the conclusion of the receivership.

This brings the total award for all work done by the Receiver and his counsel to **$8,933,000**. The additional award is thus **$5,056,919** ($8,933,000 minus the $3,876,081 already paid). This to be paid from the approximately $3.8 million in unclaimed pre-closing funds and the approximately $4 million in the Mutual Benefits Corporation operating account. This will not affect the approximately $117.5 million in the Asset Recovery Pool, which will be distributed in its entirety to the investors. The Court finds this amount reasonable when spread among all of the investors and in view of the work and results.

Understandably, the investors victimized by the wrongdoers (some of whom are already serving time in prison) will always be less than satisfied. However, such is the nature of fraudulent schemes. Only when there are capable attorneys and other professionals ready to accept the call from the Court can victims be compensated. To appoint only inexperienced and relatively inexpensive attorneys who seek receiverships will inure to the detriment of future investors who are entitled to the protections that Congress intended by its passage of the securities fraud laws. To those members

of Congress, SEC lawyers, prosecutors, federal judges, and other public servants, we "owe our thanks" but no compensation other than their salaries. But to private lawyers and firms, we owe reasonable compensation. A blended hourly rate of $450 in a receivership of this extended and complex nature is a reasonable fee. The firms shall be entitled to an additional award of **$5,056,919** to be paid first from the Pre-Closing Purchase <u>unclaimed</u> funds, with the balance to be paid from the Mutual Benefits Corporation operating account and the Asset Recovery pool, if necessary.

### *Distribution to Investors*

The Court directs the Receiver to distribute the funds in the Asset Recovery Pool and the balance of the funds in the Mutual Benefits Corporation operating account (after it makes distributions from the Mutual Benefits Corporation operating account to the Receiver's Accountants, Garden City, and counsel for Union Planter in accord with this Court's prior orders, D.E. Nos. 2362 and 2363) to the investors as soon as practicable.

DONE AND ORDERED in Chambers at Miami, Florida, this 7th day of December, 2009.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to Counsel of Record