## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.04-60573-CIV-MORENO/TORRES

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

vs.

MUTUAL BENEFITS CORPORATION, *et
al.*,

      Defendants,

VIATICAL BENEFACTORS, LLC, *et al.*,

      Relief Defendants.

_____/

## REPORT AND RECOMMENDATION ON
## GARNISHEE'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Garnishee Lubin & Metz, P.A.'s ("Lubin &

Metz") Motion for Summary Judgment [**D.E. 2434**].[1] This is a garnishment proceeding

in which the Receiver seeks to garnish $750,000.00 from the law firm of Lubin & Metz

on the ground that the funds are actually the property of Judgment Debtor Defendant

Steven K. Steiner ("Steiner"). We have reviewed the motion and related filings, and

the file in this case, and we recommend that Lubin & Metz's motion for summary

judgment be Granted and the Writ of Garnishment be Dissolved. Based on this

recommendation, we further recommend that Steiner's and Relief Defendants Camden

---

[1]      The Honorable Federico A. Moreno has referred the garnishment action
against Lubin & Metz, P.A., to the undersigned Magistrate Judge. [D.E. 2416].

Consulting, Inc. and SKS Consulting, Inc.'s ("Relief Defendants") Motion to Dissolve Writ of Garnishment [**D.E. 2402**] be Denied as Moot.

## I.    *FACTUAL BACKGROUND*[2]

### A.    Introduction

On April 10, 2007, this Court entered a Final Judgment of Permanent Injunction and Other Relief as to Defendant Steiner and the Relief Defendants.  [D.E. 1872]. Pursuant to the Final Judgment, these Defendants were required to pay a total of $3,925,000.00 in disgorgement and pre-judgment interest.

Steiner paid the first installment of $750,000 as required by the Final Judgment.  The second installment was due no later than April 10, 2008.  That date came and went, but Steiner did not voluntarily pay any portion of the amount that remained due.  It is undisputed that Steiner presently owes $3,124,660.50 plus post-judgment interest running from April 10, 2007.

In December 2009, Steiner paid to the Lubin & Metz law firm a portion of the proceeds – $750,000 – from the sale of an apartment he owned in New York City.  The Receiver is attempting to garnish this $750,000 on the theory that the money belongs to Steiner, not Lubin & Metz.

### B.    *Chronology of Events*

Several months prior to the entry of the Final Judgment in this case, in November of 2006, Steiner learned that he was the target of a federal investigation and retained Richard Lubin, Esq. ("Lubin"), of Lubin & Metz, to represent him through

---

[2]    The following facts are undisputed except where indicated.

trial in a criminal case which was ultimately filed in 2008, *United States v. Joel Steinger, et al.*, Case No. 08-21158-CR-JORDAN (S. D. Fla.).  According to Lubin & Metz, at that point in time, Steiner and Lubin agreed that the representation through trial would be on a flat-fee basis.  Steiner paid Lubin $50,000.00 to familiarize himself with the facts of the criminal case and determine the total fee he would charge to represent Steiner through trial.  In February 2007, Lubin informed Steiner that the flat-fee previously discussed would be $2 million, plus expenses and costs.  Steiner agreed to this fee.

The fee agreement is oral and not written.   It is Lubin & Metz's position that Steiner and Lubin agreed and intended that the flat-fee agreement was a "prepaid nonrefundable retainer - a flat fee earned on receipt and therefore the property of [Lubin & Metz] and not of Mr. Steiner."  [D.E. 2434 at 2].  The Receiver, on the other hand, argues that the facts do not support the characterization of the oral agreement as one that was non-refundable and earned entirely upon receipt.

Lubin & Metz did not keep time records nor did it submit invoices to Steiner in connection with its representation of him in the criminal case.

As previously mentioned, the Final Judgment against Steiner was entered on April 10, 2007.

On May 21, 2008, Steiner and Lubin & Metz entered into a New York security agreement through which Steiner granted to the law firm a security interest in the amount of $750,000 in his New York apartment.  Lubin & Metz asserts that the $750,000 payment was made in partial satisfaction of the $2 million flat fee that

Steiner agreed to pay the firm for defending him in the criminal case. If so, the funds would be the property of the law firm and not subject to garnishment by the Receiver.

The Receiver disputes this assertion, in part pointing out that the security agreement makes no reference to a "flat retainer" between the parties. The Receiver argues instead that the $750,000 should be treated as a "retainer deposit provided to secure the representation of Lubin & Metz and pay for fees incurred in his future representation in [the criminal] trial, and thus remains the property, in whole or in part, of" Steiner. [D.E. 2442 at 4].

On May 23, 2008, Lubin & Metz perfected its security interest in the New York apartment with the filing of a UCC-1 form.

On July 7 and 9, 2009, more than a year after Lubin & Metz obtained and perfected its security interest in the New York apartment and more than two years after the judgment was entered, the Receiver registered and recorded its judgment with the United States District Court for the Southern District of New York and with the Supreme Court, New York County, respectively.

On December 9, 2009, Steiner sold his New York apartment and satisfied Lubin & Metz's security interest in the same by directing the payment of $750,000 from the sale proceeds to Lubin & Metz. The check for $750,000 was made payable to "Richard G Lubin PA" with no mention of "trust account." But on Monday, December 21, 2009, Lubin & Metz deposited the $750,000 check into the firm's trust account. From December 21, 2009 through January 3, 2010, the Lubin & Metz law office was either substantially closed for renovations (December 21-23) or fully closed for the holidays (December 24-January 3). On Monday, January 4, 2010, the first day the office was

open after renovations and the holidays, the $750,000 was transferred from the firm's trust account to its operating account.

The Receiver then obtained a Writ of Garnishment [D.E. 2384] that it served on Lubin & Metz.  The law firm answered the Writ of Garnishment, claiming it does not hold any property belonging to Steiner.[3]

## II.   ANALYSIS

Both parties recognize that under Florida law, summary judgment in a garnishment proceeding is appropriate when there are no issues of material fact, notwithstanding the statutory right to a jury trial.  *See, e.g., Tortuga Marine Salvage Co. v. Hartford Accident & Indem. Co.*, 171 So. 2d 54, 55 (Fla. 3d DCA 1965).

Both parties also acknowledge that if the $750,000 at issue here is the property of Lubin & Metz and not of Steiner, then it is not subject to garnishment.  *See, e.g., Ginsberg v. Goldstein*, 404 So. 2d 1098, 1099 (Fla. 3d DCA 1981) ("In accordance with the basic principle of garnishment that a plaintiff merely stands in the shoes of the judgment debtor, it is universally held that property which is not actually and in 'good conscience' deemed to be owned by the debtor may not be secured by the judgment creditor." (internal citations omitted)).

For the reasons discussed below, we find there are no disputed issues of material fact concerning either the oral retainer agreement between Steiner and Lubin & Metz or whose property the $750,000 is.

---

[3]     Steiner and the Relief Defendants filed a Motion to Dissolve Writ of Garnishment [D.E. 2402] that is ripe for disposition.  Our recommendation today, to grant summary judgment in favor of Lubin & Metz and dissolve the Writ of Garnishment, renders that motion moot.

Both parties acknowledge that Florida law allows for the use of prepaid retainer agreements.  *See, e.g., In re Keller Fin. Servs. of Fla., Inc.*, 248 B.R. 859, 904-905 (Bankr. M.D. Fla. 2000) (citing The Florida Bar's Committee on Professional Ethics Opinion No. 93-2, 1993 WL 761327 (Oct. 2, 1993), and discussing different kinds of prepaid retainers in Florida).  Lubin & Metz claims that the retainer agreement is a "prepaid fee-nonrefundable" or "prepaid nonrefundable retainer," also known as an "earned on receipt retainer" or "advance payment retainer."  This type of retainer is described as follows:

> A prepaid fee which the attorney and client have expressly agreed is nonrefundable is likewise earned upon receipt and so should not be held in trust but should be deposited into the attorney's general account. Nevertheless, the lawyer may later be obligated to refund part, or possibly all of it, if the legal services are not performed, in which case the fee may be found to be excessive, but the money is the lawyer's upon receipt of it.

*Id.* at 904 (emphasis omitted).

The Receiver, on the other hand, contends that the oral retainer agreement is a "prepaid fee-deposit," also called a "prepaid security retainer," which is described in Fl. Eth. Op. 93-2 as follows:

> On the other hand, the prepaid fee may be given to the attorney with the understanding that it is a deposit securing a fee that is yet to be earned. Such money does not belong to the lawyer, and should be held in trust until it has been earned by performance of the agreed-upon services. The Committee believes that there should exist a presumption that prepaid fees are an advance deposit against fees for work that is yet to be performed. Certainly, this is the assumption that the typical client would make.  The attorney should bear the burden of rebutting this presumption.

*Id.*

### A.   *Oral Agreement between Steiner and Lubin & Metz*

We find the essential terms of the oral retainer agreement between Steiner and Lubin & Metz are not in dispute.  The Receiver is trying to inject an element of ambiguity into this case where there is none.  Steiner testified unambiguously at his March 5, 2010 deposition that he and Lubin agreed that Lubin would represent him in his criminal case through trial for a flat fee of $2 million, plus costs.  [D.E. 2435-7 at 37-41].  Steiner stated that the $2 million was "a fee for [Lubin] to represent me in the trial, to prove my innocence" and was intended to cover "work [Lubin] had done to-date and to continue on through trial," that costs would be in addition to the $2 million fee, and that in the event Lubin were ever replaced by substitute counsel, he thought Lubin would get to keep the $2 million.  [*Id.* at 38, 40-41].

As a preliminary matter, the Receiver suggests a disputed issue of material fact exists because the oral retainer agreement was not reduced to writing.  The Receiver notes that at the time Steiner made the $750,000 payment to Lubin & Metz, the Florida Supreme Court had adopted an amendment to Rule 4-1.5(e) of the Rules Regulating the Florida Bar that required a nonrefundable retainer for legal services to be in writing.  This argument is unavailing.

Steiner and Lubin reached an agreement on legal representation for Steiner in November 2006 (or February 2007 at the very latest).  At that time, there was no requirement that non-refundable retainers for legal services be in writing. The version of Rule 4-1.5(e) of the Rules Regulating the Florida Bar which was then in effect provided that:

When the lawyer has not regularly represented the client, the basis or rate of the fee and costs shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

While it is true that Rule 4-1.5(e) has since been amended to require that non-refundable fee arrangements be in writing, the amendment did not take effect until February 1, 2010.[4]  But at the time Steiner and Lubin reached their oral fee arrangement, as well as in 2008 when Steiner paid the $750,000 to Lubin & Metz, there was no requirement that a non-refundable earned on receipt retainer be in writing.  Thus, the fact that the parties did not reduce their oral retainer agreement to writing is of no moment.

To the extent there was any ambiguity in Steiner's testimony about the oral agreement with Lubin (though we do not think there was), Steiner has submitted an affidavit that eliminates all doubt about the nature of the oral retainer agreement:

> 3.    The oral agreement I have with [Lubin & Metz] is an oral retainer agreement through which I agreed to pay [Lubin & Metz] $2 million to represent me through the conclusion of my criminal trial.  This amount does not include costs to [Lubin & Metz], which were to be paid separately.  The $2 million is the total amount of attorney's fees owed to [Lubin & Metz] for all work done to represent me in the criminal case.
>
> 4.    I could not afford to pay the $2 million in one lump sum so I made separate payments towards this amount at different times.  These payments were all made in partial satisfaction of the original $2 million agreed upon fee.

---

[4]    Rule 4-1.5(e) now provides that "[a] fee for legal services that is nonrefundable in any part shall be confirmed in writing and shall explain the intent of the parties as to the nature and amount of the nonrefundable fee." The Commentary to Rule 4-1.5 elaborates:  "In order to avoid misunderstandings concerning the nature of legal fees, written documentation is required when any aspect of the fee is nonrefundable."

> 5.     I believe that any portion of the $2 million fee that I pay to [Lubin & Metz] belongs to [Lubin & Metz] and is not refundable to me.

[D.E. 2446-1 at 3].

Steiner's sworn testimony is corroborated by the affidavits of both Lubin and Michael Metz, Esq. ("Metz"), Lubin's partner at Lubin & Metz.  Lubin stated under oath that the retainer agreement between his firm and Steiner was for a "flat $2 million, exclusive of costs and was a nonrefundable fee, characterized as a 'prepaid fee-nonrefundable,' a 'prepaid nonrefundable retainer,' an 'earned on receipt retainer,' or an 'advanced payment retainer[.]'"  [D.E. 2435-1 ¶ 4].  The retainer agreement obligated Lubin & Metz to represent Steiner through his criminal trial which was expected to last six months and involve over 100 witnesses and documentary evidence taken from over 15 million pages of documents produced in discovery or obtained during the preparation of his defense.  [*Id.* ¶ 11].  All costs and expenses incurred in connection with the Steiner representation would be in addition to the $2 million flat fee.  [*Id.* ¶ 4].  No time records of work performed in Steiner's case were kept, and no invoices were submitted to Steiner.  [*Id.* ¶¶ 4, 10].  Metz's statements under oath are consistent with Lubin's. [D.E. 2435-5 ¶¶ 4, 10-11].

On this record, the only parties to the oral agreement are in complete accord as to the essential terms of that agreement.  We agree with Lubin & Metz that the fee arrangement can only be characterized as a prepaid non-refundable retainer, a flat fee earned on receipt.  That means that Steiner's payments to the firm for legal fees would be applied toward his outstanding retainer debt, and therefore would be the property

of the law firm, not of Steiner.[5]  There is no issue of fact in this regard to put to the jury because no reasonable juror could find otherwise given this consistent testimony.

We take judicial notice of the fact that this kind of fee arrangement – non-refundable earned upon receipt – is commonplace in this district.  Criminal defense attorneys here frequently accept at the outset of a case a prepaid non-refundable flat-fee retainer to ensure they are paid for the work they perform on a case.  This occurs at least in part because, pursuant to local rule and standard practice in this district, lack of payment will not support withdrawal from representation.  Local Rule 88.7 entitled "Retained Criminal Defense Attorneys" provides:

> Retained criminal defense attorneys are expected to make financial arrangements satisfactory to themselves and sufficient to provide for representation of each defendant until the conclusion of the defendant's case at the trial level.  Failure of a defendant to pay sums owed for attorney's fees, or failure of counsel to collect a sum sufficient to compensate him for all the services usually required of defense counsel, will not constitute good cause for withdrawal after arraignment.  Every defendant, of course, has a right to appeal from any conviction.

L.R. S.D. Fla. 88.7.  Furthermore, this Court's standard notice of appearance, which criminal defense attorneys are required to utilize, provides that "[f]ee disputes between

---

[5]     Moreover, the Receiver is not akin to a third-party beneficiary who has standing to dispute the intent of the parties to an agreement.  Under Florida law, a non-party has a right to sue on a contract only where that party was an intended beneficiary of the contract.  *See*, e.g., *Rebman v. Failed Higher Education Group, Inc.*, 575 F. Supp. 2d 1272, 1276 (M.D. Fla. 2008); *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., U.S.,* 647 So. 2d 1028, 1031-31 (Fla. 4th DCA 1994).  A non-party who merely receives an incidental or consequential benefit from the contract may not seek its enforcement.  *Redman,* 575 F. Supp. 2d at 1276; *Caretta*, 647 So. 2d at 1031.  The Receiver was not an intended beneficiary of Steiner and Lubin & Metz's agreement for legal services.  In fact, in November 2006, when Steiner and Lubin & Metz reached that agreement, the Final Judgment had not yet been entered.  Steiner and Lubin & Metz could not have intended to benefit the Receiver, nor deprive the Receiver of funds, through the oral retainer agreement.

counsel and client shall not be a basis for withdrawal from this representation." The non-refundable earned upon receipt flat-fee retainer that Steiner agreed to is not unusual in the least.

In addition, we note that Lubin & Metz's conduct in handling Steiner's case is consistent with the law firm's representation being on a non-refundable flat-fee basis. No time records of work performed on Steiner's case have been kept, and no bills have been submitted to Steiner; they are not needed under a flat fee agreement that covers all work done in the case.

### B.  *Steiner's $750,000 Payment to Lubin & Metz*

We also find no dispute here regarding the $750,000 payment from Steiner to Lubin & Metz.  It was a partial payment toward the remaining debt Steiner owed on the original $2 million flat fee.  The funds belong to the law firm, not Steiner, and they are not subject to garnishment by the Receiver.

The Receiver points to the May 2008 New York security agreement as evidence that the $750,000 was not intended as a "prepaid nonrefundable retainer" or "flat fee earned on receipt," but instead was paid to secure future legal services and was really in the nature of a "prepaid security retainer."  The record shows otherwise.

The New York security agreement is the only written document before us that describes any financial arrangement between Steiner and Lubin & Metz. The Receiver suggests that if the parties had intended that sums paid by Steiner to the law firm were to be treated as a "prepaid nonrefundable retainer" or a "flat fee earned on receipt," they could have clearly stated so in the New York security agreement.  But

they did not.  Instead, because they described the $750,000 payment as necessary "to *secure* the payment of past due legal services and *future legal services*", the Receiver argues that the payment was really in the nature of a "prepaid security retainer," i.e., a retainer "given to the attorney with the understanding that it is a deposit securing a fee yet to be earned[,]" and as such, does not belong to Lubin & Metz.  [D.E. 2442 at 6 (citing from the New York security agreement  [D.E. 2443-3 at 2] and quoting from Fla. Eth. Op. 93-2, 1993 WL 761327, *3].

We disagree.  First and foremost, the New York security agreement was executed approximately one and a half years *after* Steiner and Lubin entered into their oral retainer agreement.  We have already determined that these parties agreed to a non-refundable $2 million earned upon receipt flat-fee.  There is simply no evidence to support the Receiver's suggestion that the New York security agreement somehow modified or subsumed the oral retainer agreement or transformed it into a "security retainer agreement."

A non-refundable prepaid retainer earned on receipt is for legal services to be rendered and incurred *in the future*.  The use of the preposition "pre" in "prepaid" signifies the payment is for a service that is yet to occur.  Further, because the New York security agreement was entered into a year and a half after the oral retainer agreement was reached, it encompassed legal services that had already been provided.

Finally, the Receiver places significance on the fact that the $750,000 check was deposited into the Lubin & Metz trust fund on December 21, 2009, and not transferred to the firm's operating account until January 4, 2010.  As the Receiver correctly points

out, funds that belong to a client are deposited into a trust fund whereas a prepaid flat fee would have been deposited into the firm's operating account.

However, Steiner's check was made out to "Richard G Lubin PA." There is no reference to "trust account" on the check. The law firm's explanation as to why the funds remained in the trust account from December 21st through January 4th is uncontroverted (the law office was closed), and the funds were transferred to the firm's operating account on the first day the firm was open after the check was deposited. Consequently, we find the fact that the $750,000 was initially deposited into the trust fund to be of little consequence.

### III.   CONCLUSION

For the foregoing reasons, there are no disputed issues of material fact that would preclude summary judgment in favor of Lubin & Metz. Steiner and Lubin & Metz agreed to a prepaid non-refundable $2 million retainer that was earned upon receipt. The $750,000 was made in partial payment toward that fee. The $750,000 belongs to Lubin & Metz and is not subject to garnishment by the Receiver. Accordingly, we recommend that:

1.     Garnishee Lubin & Metz, P.A.'s Motion for Summary Judgment [**D.E. 2434**] be **GRANTED** and the Writ of Garnishment directed to Lubin & Metz be dissolved.

2.     Defendant Steven K. Steiner's and Relief Defendants Camden Consulting, Inc. and SKS Consulting, Inc.'s Motion to Dissolve Writ of Garnishment [**D.E. 2402**] be **DENIED as moot**.

Pursuant to Local Magistrate Rule 4(b), the time in which to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge, is **expedited to ten (10) days** from the date of this Report and Recommendation.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *RTC v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 30th day of November, 2010.

  /s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge