UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO. 04-60573-CIV-MORENO

SECURITIES AND EXCHANGE
COMMISSIONS,

      Plaintiff,

v.

MUTUAL BENEFITS CORP., *et al*,

      Defendants.

_____/

## TRUSTEE'S MOTION FOR CLARIFICATION

Barry Mukamal, as Trustee ("Trustee") of the Mutual Benefits Keep Policy Trust (the "Trust"),  moves this Court to enter an order clarifying the rights and obligations of the Trustee with respect to the interests of the Keep Policy Investors under the Trust with respect to specific circumstances and issues that have arisen over the years, and states:

## BACKGROUND

This case originates out of a massive fraud by which more than 30,000 investors were induced into investing in viatical insurance policies owned by Mutual Benefits Corporation. In May 2004, the Securities and Exchange Commission commenced an action against Mutual Benefits Corporation, and Roberto Martinez was appointed as Receiver ("Receiver").  During the administration of the receivership, the Court gave investors a choice of maintaining their interests in the Mutual Benefits Corporation policies and paying their share of the premiums and

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310

administrative fees associated with such interests and retaining their investment.[1]  Subsequently, in September 2009 the Court authorized the formation of the Trust for the purpose of receiving, maintaining and administering 2,403 life insurance policies from the Receivership that the investors had elected to retain.  A copy of the Trust Agreement is attached as Exhibit A.  Many of these policies were owned fractionally as "Fractional Interests" (*i.e.* – there were multiple investors who each owned a portion of the total beneficial interest in the same policy.  As for the 2,403 policies transferred to the Trust with a face value of approximately $883 million, there were a total of 16,786 individual Fractional Interests held by investors).  The policies transferred to the Trust were those which the investors voted (by proportional ownership interest) to *keep*, rather than sell or lapse their policies (the "Keep Policies").  The Trust Agreement provides that the purpose of the Trust is to "to take custody of the Trust Assets and maintain and administer the Trust Assets for the benefit of the Keep Policy Investors, consistent with the terms and procedures set forth in this Trust Agreement." Trust Agreement at §2.2.  A "Keep Policy Investor" is defined as "Persons who have invested in an entire interest or a fractional interest in a Keep Policy owned of record by the Receivership Entities, and whose interest in such Keep Policy has not been forfeited as of the Closing Date."  *Id.* at § 1.1.  "Trust Assets" mean "Policies, the Policy Files and the Trust Cash".  *Id.*  Thus, the Trustee was tasked with protecting the investment interests of thousands of defrauded victims of the Mutual Benefits Corporation fraud.

As part of the wind-up of the Receivership, on August 14, 2009 the Court entered its *Order Granting Receiver's Motion for Entry of Order Approving Sale of VSI Business and Execution of Servicing Agreement, Transitional Services Agreement and Trust Agreement* [D. E.

---

[1] The Court also provided opportunity for investors to choose to liquidate investments at that time.  Those policies and investors are not material to the issues presented by this Motion.

2322], and on December 14, 2009, entered its *Order Granting Receiver's Motion for "Sale of Assets, Servicing and Transfer Order"* [D.E. 2367] (collectively, the "Sale and Servicing Orders").   Copies are attached as Exhibits "B" and "C", respectively, for the Court's convenience.   Through the Sale and Servicing Orders, the Court, *inter alia*, authorized the creation of the Trust, approved the appointment of Mr. Mukamal as the Trustee, and ordered the transfer of ownership of all of the "Keep Policies" to the Trust, to be administered consistent with the "Policy Administration Orders" previously entered by the Court in the receivership case.[2] The express purpose of the Trust is "to take custody of the Trust Assets and maintain and administer the Trust Assets for the benefit of the Keep Policy Investors …" (Trust, Section 2.2).

During the course of the Trust administration, Keep Policy investors sometimes default on their obligation to pay their portion of the periodic premiums corresponding to the Fractional Interest in the insurance policy.  If even one owner of a Fractional Interest fails to pay their pro-rata share of the premium, it can result in a premium shortfall that could lead to a default for the entire policy.  Such a default would damage all the other investors in that policy, even if they each promptly paid their full, corresponding premium amount.  In order to avoid this situation, the Trustee attempts to sell the Fractional Interest of a defaulting investor to a new purchaser that will pay the premium.  In this way, the Trustee fulfills the purpose of the Trust by maintaining the policy in force for the benefit of all the investors in that particular policy.

---

[2] The "Policy Administration Orders"  refers to the Court's *Order Granting Receiver's Motion to Authorize Procedures for Re-Designation of Beneficial Interests in Insurance Policies* entered January 30, 2007 [D.E. 1837], the *Order Regarding Future Administration of Certain Insurance Policies Subject to this Proceeding* entered April 30, 2007 [D.E. 1887], the *Order Granting Motion for Clarification and Amendment* entered January 3, 2008 [D.E. 2010], and the *Order Granting Motion for Amendment of Beneficial Interests Order* entered August 18, 2008 [D.E. 2142].

Acheron Capital, Ltd. and its affiliates ("Acheron") have been, and remain, purchasers of defaulted policy interests since 2007, prior to the formation of the Trust. As a result, Acheron is a holder of beneficial interests in a majority of the policies which are Trust Assets. Acheron continues to be a third party, arms-length purchaser from the Trustee of additional defaulted investor Fractional Interests that are subject to forfeiture. In 2015, the Trustee and Acheron negotiated an agreement (the "Acheron Agreement"), which was approved by Court Order dated April 22, 2015 [D.E. 2501]. The Acheron Agreement sets forth certain agreements between the Trustee and Acheron regarding amendments to the Servicing Agreement between the Trustee and its servicer, Litai Assets, LLC ("Litai"), the administration of the Trust, and sales of policies to Acheron.

Over time, unanticipated issues have arisen in the administration of the Trust. The Trustee is entrusted with the management of the Keep Policies as Trust Assets for the benefit of the investors, with the stated purpose of protecting the interest of the defrauded victims of the Mutual Benefit fraud. In keeping with his obligations, the Trustee has preserved those assets by selling defaulting interests in Keep Policies to Acheron in order to maintain the policies in force of the benefit of the remaining investors.

The Trustee believes that proper Trust administration should ensure that Keep Policy Investors should not forfeit any payments or rights to which they are entitled, and otherwise ensure that a subsequent purchaser does not benefit from a default to an extent more than a fair and reasonable commercial bargain. At all times, the Trustee has made every effort to act in conformity with the spirit and letter of the Trust, the Disposition Orders, and all other Court Orders, agreements, and general principals of trust administration.

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310

For the benefit of the Trust and the owners of the beneficial interests in the Keep Policies, the Trustee seeks clarification of the Trust and Disposition Orders, with respect to certain matters as necessary to ensure the proper preservation, management, and administration of the Trust Assets in a manner that is fair and equitable, while protecting the rights of the defrauded victims of Mutual Benefits fraud.

This Motion is filed in accordance with Section 6.7 of the Trust Agreement, which provides that "[t]he Trustee shall have the right (but not the duty) at any time to seek instructions from the Court concerning the management or disposition of the Trust Assets."

## CLARIFICATION REQUESTS

The Trustee seeks clarification of the rights and obligations of the Trustee with respect to the interests of Keep Policy Investors, in light of various situations which have occurred that were previously unknown by the parties at the inception of the Trust.

**1. Default, Reinstatement Rights and Forfeiture.**

Each policy investor's policy renewal premium payment for its Fractional Interest is due in anticipation of an upcoming policy period. Thus, once paid, the investor retains its interest throughout the length of that policy period and must be renewed for the following period, which is annual in many instances. The last day that the renewal premium payment is due, which is also the last day of the paid policy period, is the "Investor Forfeiture Date". As a matter of administration, policy investor interests are subject to default for non-payment 70 days prior to the Investor Forfeiture Date, with the 70-day period being referred to as the "Default Period". The Default Period provides the Trustee and the Trust's servicer, Litai, an opportunity to package the policy interests for sale and prepare for the transfer to a subsequent investor. During the Default Period, the investor retains a paid-up interest in the policy. Until the Investor

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310

Forfeiture Date, the investor still has a beneficial interest in the Fractional Interest as a result of past premium payments and can cure the default. The Trustee believes an investor should retain the full benefit of the policy period for which it paid, up and until the Investor Forfeiture Date.

The Trustee seeks clarification that during a policy investor's Default Period, the investor retains its ownership rights in the Fractional Interest and the right to reinstate their policy interest on terms reasonably acceptable to the Trustee up until the Investor Forfeiture Date. The Trustee's position is founded on the belief that an investor's interest should not be forfeited until the actual renewal premium due date because the investor has previously paid for her interest until the expiration of the policy period on that date.

**2.  Policy Maturity Prior to Sale.**

The Trustee seeks clarification regarding the disposition of interests in policies that mature, *i.e.*, the insured dies, before a sale and transfer is consummated. The Trustee's servicer maintains an offering list of all policy interests that are in a Default Period, which may be available for sale. A prospective purchaser, like Acheron, can respond with its intent to purchase the policy interests. The Trustee and the prospective purchaser may then enter into an agreement for the sale of the policy interests, which are scheduled for closing at a later date. Pursuant to the terms of the agreements, the policy interest does not transfer to the purchaser until the closing date of the sale. A situation may arise in which the insured dies and a policy matures prior to the closing date. The Trustee seeks clarification that any policy maturities that may occur prior to the closing date will be excluded from sale to the subsequent purchaser, even if the purchaser has signed an asset purchase agreement.

During the Default Period, which begins 70 days before the premium is due, the investor's policy interest is still in force and the policy interest has not been forfeited. If the

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310

policy matures upon the insured's death, there is no obligation to pay further premiums, and the policy interest cannot default.   Not only does the sale become unnecessary to prevent a policy lapse, the Trustee believes that the investor should be entitled to the death benefit at any time prior to the Investor Forfeiture Date.

This clarification is based on at least one instance in which the Trustee entered into an agreement to sell a Fractional Interest, but before the transaction closed, the insured died and the policy matured.  In such circumstances and because the sale has not closed, it is the Trustee's position that that benefit of the Fractional Interest should inure to the investor.  This would protect the investor's interest, which has not yet lapsed. Similarly, if an asset purchase agreement is executed during an investor's Default Period, that investor should be permitted to cure that default and pay the renewal premium for the policy before the Investor Forfeiture Date.  Unless the Trustee is permitted to withdraw a redeemed policy interest during that Default Period, it would allow a subsequent purchaser the ability to obtain an interest that has not been forfeited.

The Trustee believes that it is appropriate to withdraw reinstated or matured Fractional Interest from a sale transaction as noted above because it is commercially reasonable and consistent with the Trustee's fiduciary duties to the Keep Policy Investors, while not prejudicing any policy interest purchaser.[3]

### 3.  Unsold Policy Interests.

In a related scenario, a policy maturity may occur subsequent to the Investor Forfeiture Date but prior to a sale.  In such a case, the investor has forfeited its Fractional Interest. Meanwhile, Acheron, or any subsequent purchaser, has not acquired an interest in the Fractional Interest because the sale has not yet closed.  The remaining investors in the policy do not have an

---

[3] Any portion of the purchase price relating to a reinstated/matured policy interest excluded from a transaction is returned to the purchaser.

interest in the Fractional Interest because they have not made any premium payments on the forfeited Fractional Interest. Thus the issue arises as to whom should receive the benefit of the policy maturation. Generally, the Trustee attempts to avoid such a scenario. But if such an event arises, the Trustee seeks clarification as to his obligations and authority pursuant to the Trust Agreement.

On such occasions, the Trustee has distributed the benefit of the Fractional Interest to the initial investor, net of any premiums funded by the Trust relating to that interest. The Trustee has done so because the investor's interest may have lapsed, but the insurance policy remained in force. The Trust cannot retain the death benefit from the forfeited Fractional Interest and no other person has acquired that Fractional Interest, therefore, in the interest of equity, the Trustee elected to disburse the death benefit to that Keep Policy Investor, as an original victim of the Mutual Benefits fraud.

A subsequent purchaser or another investor in the policy could contend that the death benefit attributable to the lapsing Keep Policy Investor's interest should be spread among all the remaining policy investors. A subsequent purchaser may also argue that it should receive the corresponding death benefit if a policy maturity occurs after the execution for a sales agreement and before the closing of the sale. In either instance, this would result in a windfall to persons that have no interest in the Fractional Interest – to the absolute detriment of the original investor, who is the defrauded victim of the Mutual Benefits fraud.

In order to ensure that a death benefit reaches the appropriate investor upon maturity, the Trustee seeks clarification that, in the absence of a consummated policy interest sale subsequent to the Investor Forfeiture Date, the Trustee may exercise reasonable efforts to disburse the death

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310

benefit to the Keep Policy Investor, net of any premium obligation or other obligation attributable to such interest that was unpaid by the Keep Policy Investor.

The Trustee also seeks clarification that in the case of an unsold forfeited Fractional Interests, he may use reasonable commercial efforts to maintain the policy, including seeking to have the insurer reduce the overall policy death benefit commensurate with a premium reduction attributable to the defaulted investor.[4]

### 4. Surplus Unapplied Premium Funds & Policy Interest Transfer Rights.

In the course of administering the Trust, the Trustee learned that the servicer, Litai, was charging and collecting premiums that were ultimately not utilized to pay policy premiums currently due ("Surplus Funds"). According to Litai, this surplus primarily arises because it can provide only an estimate of the rising costs of insurance at the time the policy holder is billed; billing can occur as much as ninety days prior to Litai knowing the true cost of the insurance. These Surplus Funds are not a policy benefit, are not remitted to the insurance carriers, do not comprise a policy cash value increase, and are held separately in the Trust's bank account.

In the interest of fairness, the Trustee believes that these Surplus Funds should be paid to the original investors who were later determined to have paid an excess amount on account of estimated premium obligations billed and collected by Litai. The Trustee's position is based on the belief that it would be unfair to transfer these Surplus Funds for the benefit of subsequent investors, who did not pay these excess premiums, as a policy interest benefit when this surplus is not a policy asset. In contrast, it is inherently fair for the Trustee to make the payment to the

---

[4] By way of example, if one investor of ten, each holding ten percent of a $100,000 policy or $10,000 defaults. The Trustee would be able to reduce the policy benefit by the amount attributable to 10% of the premium, which for this example would be a $10,000 benefit reduction, leaving a new face value of $90,000 allocated among nine investors.

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310

investor that was actually overcharged and who funded the surplus amount. Such a payment would not be an unintended windfall to the detriment of a Keep Policy Investor.

In instances where an investor who paid the surplus funds later forfeits that interest, the Trustee believes that fairness still demands that the surplus be paid to that investor that paid into the surplus. While that defaulting investor may have forfeited the policy interest, that should not constitute a default of an unintended overpayment.

A subsequent purchaser or another investor in the policy may assert that these surplus unapplied premium funds should be deemed policy benefits and therefore available for their benefit.  That position would again result in a windfall because it would mean that such a subsequent purchaser would only pay for a Fractional Interest in a policy and any Surplus Funds that a prior investor may have paid that remain in the Trust's bank account.

Accordingly, the Trustee seeks clarification that he may reimburse any Surplus Funds – *i.e.*,  premium funds paid by an investor, that were not remitted to the insurer – even if the investor has since defaulted or forfeited its policy interests.

As to the inverse, instances have occurred in which there is not a surplus but rather a deficit that is directly attributable to the Fractional Interests and which were unknown until after the closing of the sale of the Fractional Interest.  In such instances, Trustee seeks clarification that a policy interest purchaser would remain obligated to fund its proportionate share of such deficit.

### 5.  Timing of Policy Interest Sales.

Finally, the Trustee seeks clarification that the Trust may extend the Default Period beyond the Investor Forfeiture Date, based on specific circumstances that are not detrimental to the Trust or existing policy holders, which include:

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310

a. A policy is wholly self-sustaining at its current death benefit amount; and

b. The policy investor entering into a payment agreement with the Trust during the Default Period.

### Conclusion

The Trustee seeks the Court's guidance and clarification as to the proper construction of the documents, agreements, and orders governing the Mutual Benefits Keep Policy Trust so as to implement the Court's intention for the administration of the Trust Assets.

BASED UPON THE FOREGOING, the Trustee respectfully moves this Court for entry of an order clarifying, confirming, or correcting the Trustee's interpretation of the Trust and related Orders and other agreements as set forth above, and for such other and further relief as the Court deems appropriate.

Respectfully Submitted,


GENOVESE JOBLOVE & BATTISTA, P.A.

s/ John Arrastia
John Arrastia
Fla. Bar No. 0072461
Jarrastia@gjb-law.com
Jean Pierre Bado
Fla. Bar No. 123486
Jbado@gjb-law.com
100 S.E. Second Street, 44th Floor
Miami, FL 33131
Tel: (305) 349-2300
Fax: (305) 428-8832
*Attorneys for Trustee*

GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. SECOND STREET • 44TH FLOOR • MIAMI, FLORIDA 33131 • TELEPHONE: (305) 349-2300 • FACSIMILE: • (305) 349-2310

KOZYAK TROPIN & THROCKMORTON, LLP
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134
Tel:   (305) 372-1800
Fax:  (305) 372-3508

By:  /s/ David L. Rosendorf
David L. Rosendorf
FL Bar No. 996823
dlr@kttlaw.com

*Attorneys for Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on February 25, 2019 on counsel for all the parties by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/  John Arrastia
John Arrastia