UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60573-CIV-MORENO/STRAUSS

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

MUTUAL BENEFITS CORP., *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION
ON ACHERON CAPITAL, LTD.'S MOTION TO SURCHARGE TRUSTEE
FOR EXCESSIVE FEES PURSUANT TO §736.1001, FLA. STAT.
("MOTION TO SURCHARGE") (DE 2666)**

**THIS CAUSE** is before the Court upon the Motion to Surcharge (DE 2666) by Acheron Capital, Ltd., in its capacity as the investment manager for Acheron Portfolio Trust, Avernus Portfolio Trust, Lorenzo Tonti 2006 Trust and STYX Portfolio Trust, (collectively, "Acheron"). This matter has been referred to the undersigned by the District Court to take all necessary and proper action as required by law pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the United States District Court for the Southern District of Florida ("Referral"). (DE 2631). Pursuant to the Referral, the Court held a status conference on June 10, 2020 ("Status Conference"), attended by Litai Assets LLC ("Litai"), Barry Mukamal, as Trustee (the "Trustee") of the Mutual Benefits Keep Policy Trust (the "Trust"), Acheron, and their respective counsel to address several pending motions in this case.[1] (DE 2673). The Court has carefully considered the

---

[1] In considering whether this motion is "dispositive" or "non-dispositive," the undersigned concludes that a Report and Recommendation is appropriate. *Mayer v. Wall St. Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012) (holding that postjudgment proceedings are free-standing

motion (DE 2666), the response (DE 2694), the reply (DE 2702), the record, and applicable authority. In addition, at the Status Conference, the Court heard oral argument on matters relevant from the parties. (DE 2673). Being thus duly advised, for the reasons set forth below, the undersigned **RECOMMENDS** that the Motion to Surcharge (DE 2666) be **DENIED** without prejudice.

I.  BACKGROUND

In 2004, the Securities and Exchange Commission commenced an enforcement action against Mutual Benefits Corporation and other Defendants for fraudulently selling fractional viaticated investment interests in life insurance policies. (DE 1). *See also SEC v. Mut. Benefits Corp.*, 408 F.3d 737, 738 (11th Cir. 2005).[2] The entities involved were put into receivership, and Roberto Martinez was appointed as receiver (the "Receiver"). (DE 26). The Receiver reported in

---

litigation, and an order is final in those proceedings "if it disposes of all the issues raised in the motion that initially sparked the . . . proceedings"). "Congress has taken care to ensure that parties face final dispositions by magistrate judges only by the parties' free will." *Rembert v. Apfel*, 213 F.3d 1331, 1334 (11th Cir. 2000) (*abrogated on other grounds by Chambless v. Louisiana-Pac. Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007)). Unlike with other motions in this matter, here the parties have not consented to final disposition by the undersigned. Further, the subject motion advances a discrete request for relief that would be disposed of completely if this Court issued an Order versus a Report and Recommendation. Accordingly, the undersigned proceeds by issuing a Report and Recommendation.

[2]

> A viatical settlement is a transaction in which a terminally ill insured sells the benefits of his life insurance policy to a third party in return for a lump-sum cash payment equal to a percentage of the policy's face value. The purchaser of the viatical settlement realizes a profit if, when the insured dies, the policy benefits paid are greater than the purchase price, adjusted for time value. Thus, in purchasing a viatical settlement, it is of paramount importance that an accurate determination be made of the insured's expected date of death. If the insured lives longer than expected, the purchaser of the policy will realize a reduced return, or may lose money on the investment.

*Id.*

June 2009, that pursuant to Court approval, investors in the life insurance policies had voted to either: a) sell the policy; or b) retain the policy ("Keep Policies").[3] (DE 2291 at 3). The Receiver also requested, and the Court approved, the creation of a trust to "provide for the continued maintenance and processing of the Keep Policies in accordance with the directives of this Court." (DE 2291 at 5-6, 8; DE 2322). Thus, on September 25, 2009, the Receiver and the Trustee executed the Mutual Benefits "Keep Policy" Trust Agreement (the "Trust Agreement"). (DE 2540 at 2; DE 2540-1). The Trust Agreement is between the Receiver and the Receivership Entities as settlor, and the Trustee. (DE 2540-1 at 1). Section 7 of the Trust Agreement includes provisions for this Court to address disputes related to the Trust Agreement in accordance with Florida law as follows:

> Section 7.1 <u>Governing Law</u>. This Trust Agreement shall be governed by and construed and enforced in accordance with the Laws of the State of Florida, without regard to any choice-of-law rules thereof which might apply the Laws of any other jurisdiction.
>
> Section 7.2 <u>Jurisdiction and Venue</u>. The Court shall have jurisdiction of all matters related to this Trust Agreement and all Actions with respect to this Trust Agreement, including without limitation the determination of all controversies and disputes arising under or in connection with the Trust Agreement, unless the Court shall not have subject matter jurisdiction in respect thereof, in which case such legal action, suit or proceeding, as the case may be, shall be brought in the courts of the State of Florida, sitting in Miami-Dade County.

*Id.* at §§ 7.1, 7.2.[4]

---

[3] Approximately 3,138 policies with a face value of $383,580,782 were designated to be sold, and approximately 3,037 policies with a face value of approximately $1,054,421,049 were designated to be retained by investors (the Keep Policies). *Id.*

[4] The Trust is thus governed by the provisions of The Florida Trust Code. *See Demircan v. Mikhaylov*, No. 3D18-1684, 2020 WL 2550067, at *4 (Fla. 3rd DCA May 20, 2020) (stating that The Florida Trust Code was first enacted in 2007 and applies to "all judicial proceedings concerning trusts commenced on or after July 1, 2007"); *see also* Fla. Stat. § 736.0102 (stating that "[t]his chapter may be cited as 'The Florida Trust Code'").

Concomitant with the formation of the Trust and with Court approval, the Receiver executed a sale of the receivership entity servicing the Keep Policies to Litai Assets, LLC ("Litai"). (DE 2340; DE 2367). Ultimately, the Trustee and Litai entered into a servicing agreement effective September 25, 2009 ("Primary Servicing Agreement") (DE 2266-3; DE 2491; DE 2627 at 2, n. 1) that has since been renewed (DE 2500-1; DE 2626-1) to extend servicing through December 31, 2020.

On March 19, 2015, the Trustee made an agreement (the "March 2015 Agreement") with Acheron. (DE 2500-2). The March 2015 Agreement resulted from extensive negotiations between Acheron and the Trustee and was intended to resolve Acheron's concerns as a buyer of defaulting policy interests held by the Trust.[5] (DE 2500 at 4, 9). Section 2 of the March 2015 Agreement, for example, grants Acheron rights to share fairly and equitably in "distributions, rebates, benefits, [and] credits" that are provided to other holders of interests in Keep Policies. (DE 2500-2 at § 2.) Disagreements between the Trustee and Acheron have nonetheless continued, which prompted Acheron's filing of a separate lawsuit against the Trustee. *See Acheron Portfolio Trust, et al., v. Barry Mukamal, as Trustee of the Mutual Benefits Keep Policy Trust*, Case No. 18-25099-CIV-MORENO initiated December 5, 2018 (the "Acheron Litigation"). In the instant Motion to Surcharge, Acheron seeks: (1) an accounting from the Trustee for fees paid to the Trustee or his accounting firm for services that Acheron alleges were the responsibility of Litai; and (2) repayment of this amount to the Trust. (DE 2666 at 6-7).

---

[5] "[W]hen investors in [the life insurance policies held by the Trust] do not pay their pro rata share of the premium obligations associated with their interest, the policy is at risk of lapse." (DE 2500 at 4). Acheron's purchase of such interest and payment of the premium obligations avoids the lapse of the policy and kept the non-defaulting investors from losing their interests in the policy. *Id.* As a result of its purchases, Acheron is now the owner of more than two-thirds of the investment interests held by the Trust. (DE 2676-1 at 7).

II.     DISCUSSION

Acheron's Motion to Surcharge fails for multiple reasons. In particular, the Motion to Surcharge is replete with speculation and innuendo and thus fails to demonstrate the need for the requested relief. Also, even if Acheron's claims were meritorious, Acheron lacks standing to bring them because its status as a beneficiary is pending resolution in the separate Acheron Litigation.

A.      Acheron Lacks Standing as a Beneficiary of the Trust

Acheron begins by complaining that that the Trustee has never disclosed the compensation that he and his accounting firm(s) have received from the Trust in violation of statutory requirements under §§ 736.0813(1)(d) and 736.08135(2)(b), Fla. Stat. (DE 2666 at 1). That complaint, however, is the subject of a separate motion made by Acheron to compel financial disclosure from the Trustee and to require an audit of Trust operations, which the undersigned has recommended be denied for reasons that are repeated herein. (DE 2705; DE 2580).

At the core of Acheron's Motion to Surcharge is an allegation that the Trustee has committed a breach of his fiduciary duty by paying himself for services that Litai has been paid to perform. (DE 2666 at 4-5). *See Berlinger v. Wells Fargo, N.A.*, No. 2:11-CV-459-FTM-29CM, 2015 WL 6125529, at *5 (M.D. Fla. Oct. 16, 2015), *opinion clarified*, No. 2:11-CV-459-FTM-29CM, 2016 WL 11430083 (M.D. Fla. Jan. 27, 2016) (finding elements redundant between claims for breach of trust and breach of fiduciary duty). It is axiomatic that a fiduciary duty must exist in order to find a breach of that duty. *See Sutherlin v. Wells Fargo Bank N.A.*, 767 F. App'x 812, 819 (11th Cir. 2019) (stating the elements for a breach of fiduciary duty); *Tulepan v. Roberts*, No. 14-CV-80574, 2015 WL 235441, at *11 (S.D. Fla. Jan. 16, 2015) (citations omitted). Here, as previously explained, Acheron has not yet been determined to qualify as a beneficiary. Therefore,

5

even *if* the Trustee breached his fiduciaries duties, Acheron's argument in this regard fails because where there is no duty, there can be no breach of duty.

      B.      <u>Speculation and Innuendo Insufficient to Justify Surcharge</u>

Acheron points to a filing by Litai (DE 2604 at 2), where Litai makes various allegations including that it was removed from performing accounting for the Trust in contravention of the Primary Servicing Agreement, as evidence that the Trustee is improperly benefitting himself. (DE 2666 at 2).[6] Acheron does not stop there, however. Instead, Acheron expounds on "the economic landscape" at the time the Trustee made its operational changes to hypothesize on the Trustee's motivations and cast aspersions regarding the Trustee's actions.[7]

Nowhere in Acheron's Motion to Surcharge, however, is there *any* evidence of wrongdoing by the Trustee to justify surcharging the Trustee—only innuendo. Contrary to Acheron's assertion, Litai's filings provide no "concrete evidence" of the Trustee using Trust assets to benefit himself at the expense of beneficiaries. (DE 2666 at 2). Rather, Litai's filing merely asserts in a conclusory manner that the Trustee prohibited it from doing further accounting "in contravention of the Servicing Agreement" without even citing what provision of that agreement gave it the right to do the subject accounting. (DE 2604 at 2). Such assertion, without more, is not evidence of any kind, let alone "concrete" evidence.

Also, although the Court has recently recommended that the Trustee supplement existing financial disclosures to comply with The Florida Trust Code, the undersigned's findings in this regard are no grounds for asserting wrongdoing by the Trustee such that surcharging is warranted.

---

[6] The reference pertains to DE 2604 but is stated incorrectly as DE 2592. (DE 2666 at 2).

[7] The Trustee's response notes that he takes offense to Acheron's "wild and groundless assertion" that "the Trustee, who also services as a 'panel' bankruptcy Chapter 7 trustee was motivated [to make a change] by a decline in the number of Chapter 7 bankruptcy filings from 2009 to 2015." (DE 2694 at n. 2).

(DE 2705). Rather, if anything, the Court's recommendation (and, indeed, Acheron's motion that raised the issue in the first place) simply highlights that Acheron cannot presently point to any wrongful expenditures on the part of the Trustee because the Trustee has not yet disclosed his compensation or the receipts and disbursements pertaining to the operations of the Trust. *Id.*

Additionally, the Court agrees with the Trustee that the Trust Agreement empowers the Trustee, and *not* Litai, to "maintain books and records" and "[t]o establish . . . accounts." (DE 2694 at 2-3; DE 2540-1 at § 3.1(b)(xix) and (xx); § 4.2). As the Trustee explains, he transferred accounts out of Litai's control, which hold the "Overpayment Balance" that is the source of funding for operations of the Trust, with good reason and in accordance with the terms of the Trust Agreement. (DE 2594 at 2-3). According to the Trustee, he anticipated the relationship with Litai becoming adverse, in part, because of Litai's "overdeveloped sense of . . . entitlement to the Overpayment Balance," and decided that the account should no longer be in the control of Litai.[8] (DE 2694 at 3).

As the Court communicated to the parties at the Status Conference, while the undersigned recognizes the parties' suspicion of one another and the deterioration of the relationships between the Trustee on one side and Acheron and Litai on the other, the Court's role is not to second-guess business decisions. (DE 2693 at 260:8-23). The Court's interest, rather, is in "protecting the victims of the original fraud," and the continued litigation between the parties constitutes a disservice to them. *Id.* at 260:24-261:3. Further, the Court observes that, while Acheron complains about expenditures of the Trust on one hand, it contributes to the significant ongoing litigation

---

[8] Litai has alleged a contractual right to monies in the Overpayment Balance and has objected to various decisions of the Trustee that involve expenditures funded by the Overpayment Balance. (DE 2793 at 229:13-25 to 230:1-4). The undersigned has determined, and has stated in an Order requiring an evidentiary hearing, that Litai's asserted right "is speculative and may not be asserted to preclude the Trustee's use of his business judgment to manage the operations of the Trust." (DE 2682 at 7-8).

expenses by causing the Trust to expend money for redundant legal defenses through actions and motions that address similar—if not identical—issues, e.g., pursuit of financial disclosure by the Trust. Therefore, for the reasons stated, the undersigned finds that Acheron's Motion to Surcharge is premature, speculative, duplicative, and without merit.

III.     CONCLUSION

Accordingly, the undersigned **RECOMMENDS** that Acheron's Motion to Surcharge (DE 2666) be **DENIED** without prejudice.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Fort Lauderdale, Florida, this 8th day of July 2020.

Jared M. Strauss
United States Magistrate Judge

Copies furnished via CM/ECF to:

Hon. Federico A. Moreno

Counsel of record