UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60573-CIV-MORENO/STRAUSS

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MUTUAL BENEFITS CORP., *et al.*,

      Defendants.

_____/

## SUPPLEMENTAL REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART MOTION TO COMPEL (DE 2653)[1]

**THIS CAUSE** has come before me upon the District Court's Order of Referral to Magistrate Judge Strauss Regarding Litai Assets, LLC's Objections Regarding the Court's Subject Matter Jurisdiction and the Trustee's Motion for Clarification ("Order of Referral").[2]  (DE 2854). The District Court noted that "Litai Assets, LLC [("Litai")] did not explicitly raise the Court's subject matter jurisdiction before [me] in [my] consideration of the . . . motion to compel" ("Motion to Compel") made by Barry Mukamal, as Trustee ("Trustee") of the Mutual Benefits Keep Policy Trust (the "Trust").[3]  (DE 2653).  Having considered Litai's objections (DE 2833), the Response (DE 2838), the Reply (DE 2842) and having heard oral argument from the Trustee

---

[1] This Report and Recommendation supplements the Report and Recommendation to Grant in Part and Deny in Part Motion to Compel that I issued on November 25, 2020 ("Original Report"). (DE 2830).  If the Court disagrees with this supplement and finds that it has subject matter jurisdiction over the entire subject dispute, then the Original Report's recommendations are reasonable and the correct approach to the subject dispute.

[2] The Trustee's Motion for Clarification (DE 2853) is addressed separately.  *See* DE 2870.

[3] The Motion to Compel seeks to compel Litai Assets LLC ("Litai"), the Trust's policy servicer, to provide the Trust with its data in usable, industry-standard format.  (DE 2653 at 1).

and Litai (the "Parties") as to subject matter jurisdiction at a status conference held on February 10, 2021 ("Status Conference"), it is respectfully **RECOMMENDED** that the Motion to Compel (DE 2653) be **GRANTED IN PART AND DENIED IN PART** for the reasons set forth herein.

## I.    BACKGROUND

As described more fully below and in the Original Report, the Motion to Compel seeks a declaration that the Trust owns certain data in Litai's possession and an order requiring Litai to provide that data to the Trust in a "useable, industry-standard format." (DE 2653 at 1). Litai objected on the basis that providing the Trust with its data in the manner demanded would infringe on Litai's intellectual property rights. Following an Evidentiary Hearing on November 25, 2020 to address Litai's objections, I issued the Original Report that recommended granting in part the Trustee's Motion to Compel. (DE 2830). Specifically, the Original Report recommended that Litai be ordered to provide the Trust's data in a usable, industry standard format of Litai's choosing to facilitate the transfer of servicing to a new servicer within a timeframe that allowed for adequate testing of a bulk transfer of the data prior to the termination of Litai's contractual obligations. (DE 2830 at 19). The Original Report's recommendation was limited to requiring Litai to provide the Trust with its data "for the purpose of transferring servicing to a new servicer" because the Trust's need for the data evolved over time and became necessary more recently in the context of a transfer of servicing to Q Capital Strategies, LLC ("Q Capital") and a termination of the servicing relationship with Litai.[4] (DE 2830 at 9, 18). Notably, Litai stated in open Court at the Evidentiary

---

[4] On October 16, 2020, the Trustee filed notice that he had selected Q Capital as primary servicer upon expiration of the Servicing Agreement. (DE 2795). The Trustee, Litai, and Acheron Capital, Ltd., in its capacity as the investment manager for Acheron Portfolio Trust, Avernus Portfolio Trust, Lorenzo Tonti 2006 Trust and STYX Portfolio Trust, (collectively, "Acheron") agreed upon an extension of the Servicing Agreement to allow time for the Trustee and Acheron to arbitrate disputes related to a new servicing agreement with Q Capital. (DE 2797 at 6:20-10:16; DE 2794; DE 2798).

Hearing that it was prepared to provide, and had no problem providing, the Trust with its data in a standard format that is used "predominantly for data transfers."[5]  (DE 2821 at 20:21-25; 170:3-7).  Litai would not agree, however, to provide the entirety of the data prior to termination of the Servicing Agreement.  (DE 2828 at 68:8-74:5).  Nonetheless, I recommended an intermediate transfer before the end of the servicing agreement to allow the Trustee time to test the bulk transfer of data from Litai and minimize risk.  (DE 2830).  Following issuance of the Original Report, Litai timely filed objections challenging the Court's subject matter jurisdiction over the dispute.  (DE 2833).  The District Court then referred Litai's objections regarding subject matter jurisdiction to me for appropriate disposition.  (DE 2854).

The Securities and Exchange Commission commenced the underlying enforcement action in 2004 against Mutual Benefits Corporation and other Defendants for fraudulently selling fractional viaticated investment interests in life insurance policies.  (DE 1).  *See also SEC v. Mut. Benefits Corp.*, 408 F.3d 737, 738 (11th Cir. 2005).[6]  The entities involved were put into

---

[5] At the Evidentiary Hearing, Litai acknowledged that "there is no dispute that the Trust owns the data that the receiver transferred to it 11 years ago."  (DE 2821 at 18:1-5; 170:3-4).  Litai argued, however, that it could not deliver the data as the Trustee requested it because the Trustee is a potential competitor to Litai and is seeking to acquire Litai's trade secrets.  (DE 2684 at 1; DE 2821 at 20:7-13).  Nonetheless, Litai has appeared on multiple occasions to acquiesce in providing the Trust with its data.  For example, at the Evidentiary Hearing, Litai proposed using what it asserted was a standard format for data transfers and stated that it was prepared to provide the data in that format.  (DE 2821 at 20:21-21:3).  Additionally, in a follow-up hearing, Litai stated that, while it "[did] not believe the Court ha[d] any authority . . . to order the transfer of the data in any particular format," it hoped to avoid continuing to litigate the issue "by voluntarily providing the data in industry acceptable format." (DE 2828 at 49:22-50:4).

[6]

> A viatical settlement is a transaction in which a terminally ill insured sells the benefits of his life insurance policy to a third party in return for a lump-sum cash payment equal to a percentage of the policy's face value. The purchaser of the viatical settlement realizes a profit if, when the insured dies, the policy benefits paid are greater than the purchase price, adjusted for time value. Thus, in purchasing a viatical settlement, it is of paramount importance that an accurate determination be made of the insured's expected date of death. If the insured lives longer than

receivership, and Roberto Martinez was appointed as receiver (the "Receiver").  (DE 26).  By September of 2005, the Court determined that "the vast majority of investors would like to have a choice regarding the ultimate disposition of their interests" and ordered that investors be allowed to vote whether to retain or sell their interests.  (DE 1339 at 2-3).  The Receiver then conducted a vote whereby investors in the life insurance policies voted to either: a) sell the policy; or b) retain the policy ("Keep Policies").[7]  (DE 2291 at 3).

By 2009, the Receiver sought to sell the servicing business and transition continued management and servicing of the remaining Keep Policies to private entities because servicing of the Keep Policies would need to be maintained "for a longer period of time than the other remaining functions of the Receivership."[8]  (DE 2266 at 5).  Accordingly, in April 2009, the Receiver requested (DE 2266), and the Court approved (DE 2267), documents whose terms would accomplish the creation of a Trust, the transfer of certain assets to the Trust ("Trust Assets"), and the sale of the "VSI servicing business" to the predecessor of Litai, which entity would continue servicing the receivership assets transferred to the Trust (collectively, the "Transaction").  The agreements comprising the Court-approved Transaction were the Asset Purchase Agreement, the Transitional Services Agreement, the Servicing Agreement, and the Trust Agreement (the "Agreements").   (DE 2367 at ¶11); *see also* DE 2266 at 7 (describing the "Transaction

---

expected, the purchaser of the policy will realize a reduced return, or may lose money on the investment.

*Id.*

[7] The Trustee reported that, as of January 19, 2021, there remains 3,443 total policy interests being maintained by the Trust with a face value of approximately $258 million.  (DE 2851-1 at 1). According to the Trustee, of the 3,443 total policy interests, the Trust is servicing 2,183 interests for victims of the original fraud.  *Id.*   Also, the Trustee reported that 1,306 total policies are still held by the Trust.  *Id.*

[8] The Court granted the Receiver's motion for discharge in September 2018.  (DE 2517).

4

Documents"). To facilitate the Transaction, the Court specifically ordered "the transfer[  ] [of] the ownership and nominal beneficial interest in the Keep Policies to [the] Trustee to serve in the stead of the Receiver." (DE 2291 at 5; DE 2322; DE 2266; DE 2267). The Court also specifically ordered that "[a]t the Closing [of the Transaction], the Trustee will be vested with all claims, options, privileges, right, title and interest in, to and under the Trust Assets, free and clear of all Encumbrances." (DE 2367 at ¶9) In addition, the Court ordered that the Agreements, and any related agreements, could be modified without further notice to the Court only if the modification was "for the purpose of fulfilling the intent of the Agreements and [did] not constitute a material modification of the Agreements." (DE 2367 at ¶16).

In furtherance of the Court's authorization and directives, on September 25, 2009, the Receiver and the Trustee executed the Mutual Benefits "Keep Policy" Trust Agreement (the "Trust Agreement"). (DE 2540 at 2; DE 2540-1). The Trust Agreement is between the Receiver and the receivership Entities as settlor, and the Trustee. (DE 2540-1 at 1). "The purpose of the Trust [was] to take custody of the Trust Assets and maintain and administer the Trust Assets for the benefit of the Keep policy Investors. . .." *Id.* at § 2.2. Trust Assets consists of "Policies, the Policy Files and the Trust Cash." (DE 2540 at 2) (citing the Trust Agreement at § 1.1).

The Asset Purchase Agreement, which was executed by the Receiver and the predecessor of Litai pursuant to the Court's authorization and directives with respect to the Transaction, defines Policy Files, in relevant part, as follows:

> [A]ll files, documents, instruments, papers, correspondence, communications, books and records (including all originals thereof) evidencing or otherwise relating to the Keep Policies, *whether in physical, electronic or other form or medium*, including, without limitation, (i) the Keep Policies and all correspondence relating thereto, (ii) all information and records with respect to the health status and whereabouts of each insured under a Keep Policy, (iii) all accounting records, including the accounting and bookkeeping records incident to the ownership, premium payments and receipts and distributions of proceeds with respect to each

> Keep Policy made to or received from the insurance companies that issued the Keep Policies, (iv) all documents and instruments executed and/or delivered by or to Seller, a Receivership Entity, each Keep Policy Investor and any Third Party Beneficiary, an insured, a viator or any other Person in respect of a Keep Policy, or the direct or indirect acquisition, ownership or disposition thereof by Seller, any Receivership Entity, Keep Policy Investor or any Third Party Beneficiary.

(DE 2266-1 at 5, 8, § 3.2(b)) (emphasis added). The Agreements, which the Receiver entered into based upon the Court's orders, established that Litai would manage the Policy Files and that the Trust, through the Trustee, would own the Policy Files. *See* the Trust Agreement, DE 2540-1 at §§ 1.1, 2.3 (stating that Receiver "hereby transfers to the Trust the Trust Assets," which "means the Policies, the Policy Files and the Trust Cash"); *see also* DE 2266 (stating that by the Trust Agreement, "the Trustee will . . . become the owner of the Policy Files"). The Servicing Agreement approved by the Court acknowledges Litai's role in managing the Policy Files in its preamble:

> WHEREAS, the Sale of Assets, Servicing and Transfer Order authorized and directed the Trustee to enter into this Agreement, pursuant to which the Servicer would agree to manage the portfolio of Keep Policies and the Policy Files, collect funds necessary to service the Keep Policies, and pay premiums due on the Keep Policies.

(DE 2266-3 at 1). The term Policy Files is, therefore, inclusive of additional records that came into existence as a result of Litai's management of the Policy Files rather than only the records in existence at the time that the Transaction was consummated. In other words, the Transaction directed by the Court and entered into by the Receiver determined ownership of the Policy Files, i.e., the files, books, and records as more fully described in the definition of Policy Files pertaining to the Keep Policies, which would evolve over time coinciding with Litai's management of the Policy Files (the "Data").

The Parties have not explicitly agreed to a definition of the "data" at issue in the Motion to Compel. However, at the Evidentiary Hearing, the Trustee argued that the Receiver's sale of assets

to Litai's predecessor identified "policy files" among those assets excluded from that sale (and, by implication, transferred to the Trust).  (DE 2821 at 10:11-11:24).  Thus, the Trustee argued that the policy files "include everything that the Trust would want."  (DE 2821 at 10:11-12:23).  Litai asserted during the Evidentiary Hearing "that [it did not] think there [was] a dispute as to what the Trust data is, and [also stated that] Litai has no problem providing the Trust with all of its data." (DE 2821 at 170:3-5).  Litai further explained that "Litai has not created any new viator files.  . . . [I]f something changes . . . those changes are all included in the data . . . and will [be] provide[d]. *Id.* at 171:2-6.  The Trustee testified, however, that he "[had] been asking for historical data on policies that involve Acheron and . . . was barred from having [it]."  Whether or not the Parties agree as to what the Trust's "data" comprises, in order to explain exactly what I am addressing in the instant Report, I define Data here as the Policy Files pertaining to the Keep Policies, as those Policy Files have evolved throughout Litai's management of them.

Litai and the Trustee entered into the Servicing Agreement effective September 25, 2009 as part of the Transaction authorized and directed by the Court (DE 2266-3; DE 2491; DE 2627 at 2, n.1; DE 2809-14), which has been renewed (DE 2500-1; DE 2626-1; DE 2794; DE 2798) to extend servicing through the later of (a) March 31, 2021 or (b) ten (10) days after the date that the Court enters an Order approving a new servicing agreement (collectively, the "Servicing Agreement").  The Servicing Agreement gives the Trustee "the right to examine and audit . . . information of the Servicer . . . to the extent relating to [among other things] . . . premiums or other amounts payable by the Trust."  (DE 2266-3 at § 8.3).

Relevant to Litai's objections, section 17 of the Servicing Agreement provides consent by the Parties to the jurisdiction of the Court regarding "any legal action, suit or proceeding against [either Party] with respect to [a Party's] obligations or liabilities or any other matter under or

arising out of or in connection with this Agreement . . . *unless the Court shall not have subject matter jurisdiction in respect thereof*."   (DE 2809-14 at § 17.17(b)).  In the event that the Court lacks subject matter jurisdiction, the Servicing Agreement provides that "such legal action . . . shall be brought in the courts of the State of Florida, sitting in Miami-Dade County."  *Id.*

Similarly, the Trust Agreement broadly confers jurisdiction upon the Court for all matters related to the Trust Agreement unless subject matter jurisdiction is lacking.  Specifically, section 7.2 states:

> The Court shall have jurisdiction of all matters related to this Trust Agreement and all Actions with respect to this Trust Agreement, including without limitation the determination of all controversies and disputes arising under or in connection with this Trust Agreement, *unless the Court shall not have subject matter jurisdiction in respect thereof*, in which case such legal action, suit or proceeding, as the case may be, shall be brought in the courts of the State of Florida, sitting in Miami-Dade County.

(DE 2540-1 at § 7.2) (emphasis added).  "Court" is defined as Case No.: 04-60573 CIV-MORENO in the United States District Court for the Southern District of Florida.  *Id.* at 1; § 1.1.

Furthermore, section 3 of the Trust Agreement confers broad powers on the Trustee to administer the Trust including the power to monitor performance of the Servicer.  *Id.* at §§ 3.1(a) and (b)(iii).  Additionally, the Trust Agreement specifically confers upon the Trustee the power and duty "to periodically review the books, records, bank statements and *electronic data of the Servicer that pertain to the payment of premiums associated with the Keep Policies and the payments in satisfaction of obligations to the Keep Policy Investors* and to periodically review *such reports with respect to such payments as requested of the Servicer under the Servicing Agreement from time to time*."  *Id.* at § 3.1(b)(vii) (emphasis added).  The Trust Agreement also confers upon the Trustee the power and duty "[t]o negotiate and enter into a servicing agreement with a substitute servicer in the event of termination or expiration of the Servicing Agreement, or

make such other arrangements as the Trustee deems appropriate in the circumstances to administer the Keep Policies." *Id.* at § 3.1(b)(xvi).

Various disputes have arisen between the Trustee and Litai, including Litai repeatedly complaining that the Trustee seeks to "itself or have others replicate [its] system, and start a competing servicing company." (DE 2550 at 4; DE 2652 at 29; DE 2821 at 20:7-21:18; DE 2684-1 at ¶¶8-14).[9]  On May 27, 2020, the Trustee filed his Motion to Compel (DE 2653) seeking: (1) "an Order determining that the Trust is the owner of its data and information regarding policies, investors, and operations under the Trust" ("Declaratory Relief");  and (2) "[an Order] compelling [Litai] to provide the Trust[10] with its data in usable, industry standard format" ("Injunctive Relief").  (DE 2653 at 1, ¶33, 19).

With respect to the request for Injunctive Relief, the Trustee seeks "a complete copy of any and all Trust data, containing appropriate links to policy and investor documents from the inception of the Trust to the present date, in an industry standard format, such as SQL, updated at the Trustee's request."  (DE 2653 at 1, ¶33, 19).  The Trustee, however, has been agnostic as to the actual format.  *See* DE 2695 at ¶2 (stating that the Trustee was seeking the data to "be exported in any commercially reasonable industry standard format, such as .BAK or SQL"); *see also* DE 2821 at 161:16-17; 163:8-9 ("We will take it in any industry acceptable format. . . . What we are looking for is [     ] information that could be imported into another system that can be utilized.").  Additionally, the Trustee has moved the Court "for a determination that the Trust is entitled to full and unrestricted access to its [d]ata, for all periods of time, compelling Litai to provide the Trust

---

[9] Litai has also stated that, if "the Trustee agrees not to do that . . . then, Litai will allow the Trustee access [to the system]."  (DE 2652 at 29).

[10] At the Evidentiary Hearing, the Trustee stated that delivery of the data to another servicer, rather than to the Trust directly, would be sufficient.  (DE 2821 at 182:11-183:7).

with its data upon request." (DE 2653 at 19). This latter request arises, at least in part, as a result of the Parties' inability to stipulate to a confidentiality agreement.[11]

Litai argued in response to the Motion to Compel that the Trustee demands Litai's trade secrets and that the Trustee must file a separate civil action to compel Litai, a nonparty, to produce anything. (DE 2684 at 2). Litai also argued that the Trustee would necessarily need to bring a claim for breach of the Servicing Agreement as a separate lawsuit. *Id.* at 3. Furthermore, Litai asserted that its proprietary servicing system, Premium Billing and Tracking System, ("PBTS") and the structure and schema of PBTS's databases qualify as trade secrets. *Id.* at 1, 5. Litai additionally asserted that it *has* provided the Trustee with the data underlying its proprietary database schema and that the schema itself is what Litai purchased from the Receiver and further developed. *Id.* at 7-8. Litai further suggested that the Trustee could replicate what the Receiver did in creating PBTS and "hire a third party to develop and test their own system . . . [rather than] stand on Litai's shoulders by taking control of the relational databases belonging to Litai."[12] *Id.* At Litai's suggestion, as previously noted, I held an Evidentiary Hearing (DE 2821) "[t]o determine whether the requested information constituted a trade secret."[13] (DE 2684 at 8-9). The

---

[11] *See* Declaration of Jan-Eric Samuel, 2684-2 at ¶¶52-53 (responding to the Trustee's assertion that Litai insists upon a confidentiality agreement that would preclude the Trustee from using the information with any servicer other than Litai and asserting that Litai merely seeks to prevent the use of Litai's confidential information by others for purposes of servicing but will provide the Trustee with access to Litai's confidential information with appropriate safeguards).

[12] The Trustee testified at the Evidentiary Hearing that Aaron Smith, principal of Proactive Technologies, LLC, who was involved with the receivership preceding the formation of the Trust, was retained as a consultant for the Trust and developed software for "[t]he fractional component of the servicing system." (DE 2821 at 190:18-191:24).

[13] Litai's Response stated that an evidentiary hearing was required, *at a minimum*, in lieu of the Court directing the Trustee to file a separate civil action. (DE 2684 at 8, 10).

Trustee agreed to the Evidentiary Hearing to the extent that it was necessary to reach the issue of Litai's trade secrets in order to resolve the Motion to Compel.  (DE 2795 at 7).

## II.   LEGAL STANDARDS

"[D]istrict court[s] must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)."  *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016) (citing *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997)).  Federal Rule of Civil Procedure 12(h)(3) provides, that if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Thus, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  Because federal courts are courts of limited jurisdiction, a cause is presumed to lie outside of a federal court's power unless the party asserting jurisdiction meets its burden to establish that jurisdiction exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Further, subject matter jurisdiction cannot be waived and may be raised as an issue at any time during litigation.  *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

It is uncontroverted that the instant dispute over ownership of Trust data and what obligation (if any) Litai has to provide that data to the Trust in any particular format at any particular time does not fit within any of the three categories listed in *PTA-FLA, Inc.*  Rather the question is whether the instant dispute falls within the Court's "collateral" or "ancillary" jurisdiction.  "A collateral or ancillary issue is a claim that, on its own, does not invoke an independent basis of subject matter jurisdiction but that is so closely related to a case properly in federal court as to justify the conclusion that they are all part of a single case or controversy."

*PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1308 (11th Cir. 2016) (citing Charles Alan Wright & Arthur R. Miller, 13 Federal Practice and Procedure § 3523 (3d ed. 2004) and quoting *Morrow v. District of Columbia*, 417 F.2d 728, 740 (D.C. Cir. 1969) for the proposition that ancillary jurisdiction applies when the matter "arises from the same transaction which was the basis of the main proceeding, or arises during the course of the main matter").   "[R]esolution of a collateral issue does not signify a district court's assessment of the legal merits of the case."  *Id.* at 1309 (internal quotation marks and citation omitted).

"[A] federal court may exercise ancillary jurisdiction [in two instances:] '(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'"  *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (quoting *Kokkonen*, 511 U.S. at 379-80); *see also Nat'l Mar. Servs., Inc. v. Straub*, 776 F.3d 783, 786 (11th Cir. 2015) (quoting *Peacock*, 516 U.S. at 354 and stating that "[a]ncillary jurisdiction exists in two circumstances").   The first type of ancillary jurisdiction, applying to factually interdependent claims, was codified by section 1367, entitled Supplemental jurisdiction. 28 U.S.C. § 1367.   This type of ancillary jurisdiction disappears following dismissal of an original federal dispute.  *See Peacock*, 516 U.S. at 355.

The second type of ancillary jurisdiction, at issue here, invokes a federal court's "power to protect its proceedings and vindicate its authority."  *Kokkonen*, 511 U.S. at 379-80 (citations omitted).   This power is related to "what courts require in order to perform their functions."  *Id.* at 380-81 (finding that a suit for breach of a settlement agreement, where the court did not reserve jurisdiction to enforce it, involved facts far removed from the facts determined in the original suit and that automatic jurisdiction over such agreements was not essential to the federal court's

conduct of business). Also known as ancillary enforcement jurisdiction, the second type of ancillary jurisdiction ensures that federal judicial power is adequate for a federal court to enforce its judgments. *Peacock*, 516 U.S. at 356 (quoting *Riggs v. Johnson County*, 6 Wall. 166, 187, 18 L.Ed. 768 (1868) and stating that "[w]ithout jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution'").

Thus, exercise of ancillary jurisdiction has been found appropriate "over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Peacock*, 516 U.S. at 356-57 (citations omitted); *see also Nat'l Mar. Servs., Inc.*, 776 F.3d at 786–87 (same). Courts are cautioned, however, "against the exercise of [ancillary] jurisdiction over proceedings that are entirely new and original, or where the relief sought is of a different kind or on a different principle than that of the prior decree." *Peacock*, 516 U.S. at 358 (internal quotation marks and citations omitted).

Consistent with the above principles, courts consider four factors in determining whether to exercise ancillary jurisdiction: "(1) [whether] the ancillary matter arises from the transaction that was the basis of the principal proceeding, during the principal proceeding, or as an integral part of the main proceeding; (2) [whether] the Court will be able to determine the matter without a substantial new fact-finding proceeding; (3) [whether] the failure to determine the matter will deprive a party of an important procedural or substantive right; and (4) [whether] deciding the matter is necessary to protect the integrity of the principal proceeding or ensure its disposition is not frustrated." *Kovalivker v. Team Real Estate Mgmt.*, LLC, No. 18-21962-CIV, 2019 WL 9093471, at *4 (S.D. Fla. Oct. 15, 2019) (citing *Am. Fed'n of State, Cty., & Mun. Emps. Council*

*79 v. Scott*, 949 F. Supp. 2d 1239, 1243 (S.D. Fla. 2013) (citing *Bruton v. Carnival Corp.*, 916 F. Supp. 2d 1262, 1266 (S.D. Fla. 2012) and *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982))); *see also Trianon Condo. Apartments Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-80812, 2011 WL 664317, at *2 (S.D. Fla. Feb. 23, 2011), *report and recommendation approved sub nom. Trianon Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-80812-CIV, 2011 WL 971466 (S.D. Fla. Mar. 18, 2011) (quoting *Jenkins*, 670 F.2d at 918 as stating that the factors derive from *Morrow*, 417 F.2d at 740).

## III.   **DISCUSSION**

Litai argues that the Court lacks ancillary subject matter jurisdiction over the instant dispute between Litai and the Trustee because "any 'claims' raised by the Trustee against Litai do not fall under [the] umbrella . . . of the original Receivership action, which ended more than eleven (11) years ago."  (DE 2833 at 2-5).   In addition, Litai argues that the Trust Agreement and other Transaction Documents contemplated the Court's lack of subject matter jurisdiction by providing for legal action to be brought "in the courts of the State of Florida, sitting in Miami-Dade County" in the event that the Court lacked subject matter jurisdiction.  *Id.* at 6 (citing § 7.2 of the Trust Agreement).   The Trustee, on the other hand, argues that: (1) the Court has retained jurisdiction over disputes such as the subject one; (2) the dispute is subject to the Court's jurisdiction because it "is about the Trust's right to its own data so that the Trustee may discharge his duty to administer [the] Trust Assets"; (3) Litai has been active in proceedings in this case since making an appearance in July of 2009 and has repeatedly availed itself of the Court's jurisdiction; and (4) Litai's objection is contrary to principles of ancillary jurisdiction.  (DE 2838 at 6-12).   Applying the legal principles set forth above, I find that the Court has subject matter jurisdiction with respect to the Trustee's request for Declaratory Relief as to ownership of the Trust's data.  I do not find,

however, that ancillary jurisdiction extends to provide the Court with subject matter jurisdiction with respect to the request for Injunctive Relief.  I set forth below the reasons for my findings with respect to each relief that the Trustee requested.

### A.  Declaratory Relief

Here, the Court has ancillary jurisdiction to address the Trustee's requested Declaratory Relief by virtue of the Court's order during the receivership proceedings that transferred ownership of the Policy Files, encompassing the Data at issue, from the receivership to the Trust.  Indeed, the Trustee's request for Declaratory Relief is consistent with the four factors that courts use in determining whether to exercise ancillary jurisdiction.

Factor (1) weighs in favor of ancillary jurisdiction because the requested relief is a collateral matter that arises from the receivership proceeding.  The Trustee's claim for Declaratory Relief is factually and logically dependent on the primary lawsuit because the Trustee simply asks for the Court to confirm the Trust's ownership of assets that the Court ordered would be owned by the Trust as part of the Transaction bringing the receivership action to a close.  *PTA-FLA, Inc.*, 844 F.3d at 1308.  As I have previously described, the Trust was the vehicle by which "the Receiver's present ownership and nominal beneficiary status with respect to the Keep Policies [was] transferred to [an] independent third party."  *See* DE 2266 at 6-7 ("[T]he Receiver undertook . . . negotiating the transactional documents . . . to accomplish the goal of . . . transferring the ownership and nominal beneficial interest in the Keep Policies to a trustee to serve in the stead of the Receiver.)"  Pursuant to the Court's order, the Trust became the owner of the Policy Files, including Data, that were formerly held by the receivership because the Court vested the Trustee with free and clear rights and title to the Trust Assets on behalf of the Trust.  (DE 2367 at ¶¶4, 9, 16).  The assets that the Court ordered the Receiver to transfer to the Trust, via the Trustee,

included Policy Files, and the Policy Files included the Data as previously noted.  (DE 2266-1 at

5, 8, § 3.2(b); 2266-3 at 1; DE 2266-5 at 4, § 2.3; DE 2367 at ¶¶9, 16; DE 2540-1 at § 1.1).  As

such, the Trust's data that is the subject of the dispute, historical and current, constitutes the Data

as heretofore defined, and the Trust's requested Declaratory Relief arises directly from the original

case or controversy—the receivership action— because the Data constitutes, at least in part, the

Policy Files, which in turn constitute Trust Assets.  Therefore, factor (1) weighs in favor of the

Court's exercise of ancillary jurisdiction relative to the Declaratory Relief.

Factor (2) also weighs in favor of the Court exercising ancillary jurisdiction because no

substantial new fact-finding proceeding is required to determine whether the Trust owns the Data

pertaining to the Policy Files.  The Court's order (DE 2267) granting the Receiver's motion

(DE 2266) is clear and unambiguous as it pertains to Policy Files, i.e., files, books, and records as

more fully described in the previously-stated definition of Policy Files *whether in physical,

electronic or other form or medium*.  Thus, additional proceedings for the purpose of making

further factual findings are unnecessary, and the exercise of ancillary jurisdiction is consistent with

factor (2).   Indeed, Litai does not even dispute that the Trust owns the Data.  (DE 2821 at 170:3-

5, 171:2-6).

Ancillary jurisdiction is additionally supported by factor (3) because failing to provide the

requested Declaratory Relief as to the Trust owning the Data deprives the Trustee of significant

procedural and substantive rights even though Litai has professed to not dispute that the Trust

owns its data.  *See* DE 2821 at 18:1-5; 170:3-4.  For example, the Trustee may determine it

necessary to bring an action of trover for conversion, trespass to chattels, breach of contract, or

other actions on behalf of the Trust against Litai as a result of his allegation that Litai refuses to

provide him with all of the Trust's data.  As such, an inability to obtain Declaratory Relief from

the Court that gives effect to the Court's order directing the transfer of assets that includes the Trust's Data from the receivership to the Trust could delay, if not preclude, the Trustee's ability to pursue such actions in state court.  Similar to an affirmation of an arbitral award where a court compelled the arbitration, the Declaratory Relief requested here "protect[s] against challenges in other courts." *PTA-FLA, Inc.*, 844 F.3d at 1309.  Accordingly, factor (3) weighs in favor of the Court exercising ancillary jurisdiction.

Furthermore, the Court's exercise of ancillary jurisdiction is necessary under factor (4).  The Court entered an order approving the transfer of Policy Files from the receivership to the Trust (DE 2267), and the Court also specifically ordered the Receiver, as Seller, "to consummate [the Transaction]" (DE 2367 at ¶5).  Additionally, the Court ordered that the Trustee would be vested with all rights in, to and under the Trust Assets, without encumbrance.  *Id.* at ¶9.  Data stored in Litai's computer systems that pertains to the Keep Policies are a part of the Policy Files that were transferred pursuant to the Court's orders as preciously described.  Therefore, affirming that the Trust owns the Data "is necessary to protect the integrity of the principal proceeding."  Indeed, by granting the Declaratory Relief, the Court will ensure that the disposition of the underlying case is not frustrated.  Accordingly, factor (4) weighs in favor of the Court exercising ancillary jurisdiction to grant the Declaratory Relief.

In sum, the principles applicable to ancillary enforcement jurisdiction call for the Court to exercise jurisdiction with respect to the Declaratory Relief.  All four (4) factors weigh in favor of the Court exercising ancillary enforcement jurisdiction.  In particular, the exercise of ancillary jurisdiction to grant the requested relief is consistent with the "federal court's power to protect its proceedings and vindicate its authority."  *Kokkonen*, 511 U.S. at 379-80.  Having issued an order transferring ownership of the Policy Files to the Trust, the Court exercising jurisdiction to declare

that the Trust owns all of the Data pertaining to the Policy Files of the Keep Policies, including such Data that is in electronic form and stored on Litai's systems, is consistent with protecting the receivership proceedings and vindicating the authority that the Court exercised in those proceedings. *See PTA-FLA, Inc.*, 844 F.3d at 1309 (holding that a district court compelling arbitration retains jurisdiction to confirm the arbitral award "exactly as it was issued by the arbitrator"). Accordingly, I find that the Court should exercise ancillary jurisdiction to grant the relief.

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (citing 28 U.S.C. § 2201(a)). "[T]he dispute [must] be definite and concrete, touching the legal relations of parties having adverse legal interests; and [it must] be 'real and substantial' and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 127 (internal quotation marks and citation omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (internal quotation marks and citation omitted).

Here, there is a case or actual controversy regarding the Trust's ownership of its data and the rights that the Trust has in its data that flow from such ownership. The Trustee alleges that Litai "refuses to turn over the Trust's data." (DE 2653 at 1). The Trustee also alleges that Litai claims that "once it put the Trust's data into its 'proprietary' system, any information that comes

out is clothed in Litai's trade secrets," which precludes the Trust from getting a complete and usable set of its own data without executing a confidentiality agreement that contains overly restrictive terms. *Id.* Additionally, the Trustee claims that his efforts to oversee Litai's performance, in accordance with his fiduciary responsibilities, "have been stymied" by his inability to access a complete and usable set of the Trust's data. *Id.* at 2. Moreover, the Trustee has more recently expressed a need for a complete and usable set of its data in order to adequately prepare for a transition of servicing to a new servicer. (DE 2821 at 181:3-182:21). I find that these allegations sufficiently set forth a dispute, implicating the Trustee's ownership of its data, that represents a case of actual controversy. Furthermore, as previously noted, I find that the Court should exercise ancillary jurisdiction to grant the Declaratory Relief.

### B. Injunctive Relief

The Motion to Compel, however, goes beyond simply asking for Declaratory Relief and demands that the Court require Litai to provide the Data to the Trust and proscribe the manner and format[14] in which it is provided. Thus, the Motion to Compel essentially seeks an injunction. An injunction is "'[a] court order commanding or preventing an action.'" *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) (quoting *Black's Law Dictionary* 788 (7th ed. 1999)). Suits for a preliminary or permanent injunction "must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance." *Id.* Here, the Trustee moved the Court to command Litai to provide the Trust with all of its data in a usable format upon demand; however, nothing in the Trust Agreement or the Court's orders in the underlying Transaction squarely calls for the relief the Trustee seeks. Therefore, I conclude that his claim for Injunctive

---

[14] While the Trustee has made clear that it is agnostic as to the specific technological format Litai uses to provide the Data, the crux of the dispute has been the Trustee's contention that Litai is not providing the Data in a "useable" or "industry standard" format. *See, e.g.*, DE 2653 at 2.

Relief must be based on the theory that Litai's refusal to provide the Trustee with the Data he owns either violates the terms of the Parties' contractual relationship or otherwise constitutes a tort.

I find that ancillary jurisdiction does not extend to the portion of the Parties' dispute concerning the Injunctive Relief because the Parties' contractual relationship is independent of the receivership proceedings, and the Trust Agreement and Servicing Agreement contemplated that the Court would not retain jurisdiction over disputes such as this one. The four (4) factors used by courts to decide whether to exercise ancillary jurisdiction inform my finding in this regard as further described below.

First, and most importantly, the Injunctive Relief that the Trustee requests is grounded in a claim that is too far removed from the original receivership proceedings to warrant the Court's exercise of ancillary jurisdiction. The Trustee's dispute with Litai over whether the Trust, through the Trustee, has sufficient access to its data is based upon the Trustee's direct relationship with Litai. The relationship between the Trustee and Litai was formalized through the Servicing Agreement that both Parties executed. The Receiver and the Court intended the Servicing Agreement to govern the Parties' conduct following the close of the Transaction during the receivership proceedings that essentially "privatized" the servicing function previously performed by the Receiver. Therefore, the Parties' contractual relationship "does not arise from the transaction that was the basis of the principal proceeding," which was an action to stop fraud and recover assets for victims of the fraud. Rather, the Parties' private, contractual relationship stands apart from, and follows, the principal proceedings. Disputes between the Parties sounding in tort, rather than contract, do not arise from the fraud underlying the receivership proceedings and stand even further away from those proceedings. Additionally, as Litai notes, the Court contemplated not having subject matter jurisdiction over disputes arising after the sale of the servicing business

and the creation of the Trust.  (DE 2684 at 2).  The Trust Agreement, for example, provides for the Court to determine "all controversies and disputes arising under or in connection with this Trust Agreement, *unless the Court shall not have subject matter jurisdiction*."  (DE 2540-1 at § 7.2) (emphasis added).  The Servicing Agreement similarly states that the Parties consent to bring disputes arising out of the agreement "in the Court, *unless the Court shall not have subject matter jurisdiction*." (DE 2809-14 at § 17.17(b)).  Thus, factor (1) weighs against the exercise of ancillary jurisdiction because the dispute at issue implicates the Parties' contractual, standalone relationship and is too attenuated from the receivership proceedings to invoke the Court's ancillary jurisdiction especially when the Court contemplated that disputes of this type would be subject to having an independent basis for subject matter jurisdiction.

Second, although I did engage in fact-finding relative to the dispute pertaining to Litai providing the Trust's data to the Trustee, the very determination that such fact-finding was necessary weighs against the exercise of ancillary jurisdiction.   Also, Litai argues that the Servicing Agreement does not include a provision delineating Litai's responsibilities in a transfer of servicing scenario absent Litai's default under the agreement.  (DE 2821 at 18:3-19; DE 2828 at 68:14-16).  Therefore, additional fact-finding is likely necessary to determine the responsibilities that Litai has to assist with a transfer of servicing under these circumstances.  Accordingly, because the dispute underlying the Trustee's request for Injunctive Relief cannot be resolved without "substantial new fact-finding proceeding[s]," I find that factor (2) weighs against the Court exercising ancillary jurisdiction.

Third, I do not find that the Trustee will be deprived of an important procedural or substantive right by the Court's failure to exercise ancillary jurisdiction over the dispute concerning the Trustee's right to receive the Trust's data in a usable format.  That is because an

alternative forum through which the Trustee can seek relief – the state courts of Florida – is readily available.[15]  As courts of competent jurisdiction, the identified state courts provide an adequate forum for the vindication of the Trustee's rights, whether his claim arises from an alleged breach of the contract between the Trustee and Litai or sounds in tort as a result of Litai's alleged refusal to provide (substantively or practically) the Data the Trust owns.  Indeed, the parties have already contemplated, in the Servicing Agreement, that legal actions with respect to the Parties' obligations or liabilities towards each other would be brought in "the courts of the State of Florida, sitting in Miami-Dade County" absent this Court having subject matter jurisdiction.[16]  Because the Trustee has an adequate forum for resolution of the dispute, I conclude that there is no deprivation of rights warranting the Court's exercise of ancillary jurisdiction.  Thus, factor (3) weighs against the Court exercising ancillary jurisdiction.

Fourth, the Court need not decide the dispute concerning the Trustee's demand for the Trust's data in a usable format to ensure that the integrity of the receivership proceedings remain intact.  As stated above, the Court approved the sale of the servicing business, which had been run by the Receiver, to a private party.  The Court also approved the creation of a Trust that is governed by Florida law.  (DE 2540-1 at § 7.1).  In addition, the Court approved the Servicing Agreement executed by the Parties that is likewise governed by "the laws of the State of Florida."  Through

---

[15] This Court failing to exercise ancillary jurisdiction will not deprive Litai of any substantive or procedural rights either.  In fact, as Litai argues, it will have appropriate due process rights if the Trustee files a separate civil action for his claim such as "discovery [that would] proceed in the ordinary course."  (DE 2684 at 3).

[16] Although Litai appeared to argue in its response to the Motion to Compel that the Trustee has no means of prevailing in an action to acquire his data from Litai (DE 2684 at 1-5), I conclude that Litai merely speculates as to what the outcome would be should the Trustee pursue a cause of action to acquire his data from Litai in state court.  Therefore, I find Litai's conjecture of no consequence in determining that the Trustee suffers no deprivation of rights by the Court failing to exercise ancillary jurisdiction.

these actions, the Court concluded the Receiver's servicing of the Keep Policies and implemented a structure that would function separate and apart from the receivership.  Furthermore, unlike the order that the Court entered during the receivership proceedings that explicitly transferred ownership of assets, including Data, to the Trust, no similar decree exists to put the integrity of the receivership proceedings at issue with respect to the dispute underlying the Trustee's request for Injunctive Relief.  Therefore, I find it unnecessary for the Court to decide the matter to ensure that the disposition of the receivership action, or any particular judgment that the Court issued during the receivership, is not frustrated.  Accordingly, factor (4) weighs against the Court exercising ancillary jurisdiction.

Moreover, the Trustee's other arguments, (1) that the dispute is about enabling the Trustee to administer his fiduciary duties and (2) that Litai has availed itself of the Court's jurisdiction in the past, do not merit the requested Injunctive Relief where the Court lacks an independent basis for subject matter jurisdiction.  (DE 2838 at 6-12).  As to the first argument, the Trustee argues both that "providing [for] continued maintenance and processing of the Keep Policies [is] in accordance with the directives of this Court" and  that "the relief sought . . . is consistent with the Trustee's duties and powers under the Trust Agreement," for which "this Court has retained oversight responsibilities."  *Id.* at 6-7.  However, while the Court does retain a special role in overseeing the Trust insofar as the Trust Agreement creates responsibilities for ensuring that the Trustee is complying with the agreement, that role (even coupled with the Trustee's responsibility to discharge his duties) does not confer ancillary jurisdiction over the dispute underlying the request for Injunctive Relief.  By specifically addressing subject matter jurisdiction in the Servicing Agreement and the Trust Agreement, the Court explicitly declined to retain jurisdiction over every dispute that the Trustee might encounter, even though such dispute might threaten the

Trustee's ability to carry out his duties.  Second, even if Litai availed itself of the Court's jurisdiction in the past (and I do not find that Litai has), Litai's actions in this regard likewise do not confer subject matter jurisdiction where none otherwise exists.  Ancillary jurisdiction must be determined in accordance with the principles stated above.  Accordingly, the Trustee's arguments are unavailing.

Given the Parties' contractual relationship and the private, standalone structure that the Court approved to sell the servicing business and terminate the Receiver's servicing of Keep Policies during the receivership proceedings, I conclude that the Court should not exercise ancillary jurisdiction with respect to the dispute over Litai providing the Trust with its data in a usable format.  Indeed, the Court expressly provided, through the Agreements that implemented the standalone structure, that the Court would hear such a dispute only if there was an independent basis for subject matter jurisdiction, which does not exist here.  Therefore, the Trustee's request for Injunctive Relief should be denied for lack of subject matter jurisdiction.

## IV.    <u>CONCLUSION</u>

Accordingly, I respectfully supplement the prior Report and Recommendation (DE 2830) to **RECOMMEND** that the Trustee's Motion to Compel (DE 2653) be **GRANTED IN PART AND DENIED IN PART**.  Specifically, it is recommended that:

1.    The Motion to Compel be **GRANTED** to the extent that the Trustee seeks a declaratory judgment affirming that the Trust owns the Data pertaining to the "Policy Files" that the Receiver transferred to the Trust pursuant to the Transaction Documents (DE 2266 at 7) that effectuated the disposition of receivership assets in this case.  Specifically, I recommend that the Court render a declaratory judgment as follows:

i. On April 3, 2009, the Court entered its Order Granting Receiver's Motion for Entry of Order Approving Purchase Agreement and Bidding Procedures with Respect to Sale of VSI Business ("Order").  (DE 2267).

ii. The Order approved Transaction Documents, which implemented a structure for the continued maintenance and processing of life insurance policies known as Keep Policies through the creation of a Trust with a Trustee who would acquire the ownership and nominal beneficial interest in the Keep Policies.    (DE 2266 at 4-7).

iii. The Order further approved, as part of the Transaction Documents, a Servicing Agreement providing for the Servicer to manage the portfolio of Keep Policies and the Policy Files.  (DE 2266-3 at 1).

iv. On December 14, 2009, the Court entered its Order Granting Receiver's Motion for Entry of "Sale of Assets, Servicing and Transfer Order" ("Final Judgment in the Receivership Action for Maintenance of the Keep Policies").  (DE 2367).

v. The Final Judgment in the Receivership Action for Maintenance of the Keep Policies vested the Trustee with all claims, options, privileges, right, title and interest in, to and under the Trust Assets, free and clear of all Encumbrances.

vi. The Final Judgment in the Receivership Action for Maintenance of the Keep Policies further approved the entering into of the Mutual Benefits 'Keep Policy' Trust Agreement (DE 2540-1) between the Receiver and the

Trustee, which defines Trust Assets as Policies, the Policy Files and the Trust Cash.

vii.   The Policy Files are defined as follows:

[A]ll files, documents, instruments, papers, correspondence, communications, books and records (including all originals thereof) evidencing or otherwise relating to the Keep Policies, whether in physical, electronic or other form or medium, including, without limitation, (i) the Keep Policies and all correspondence relating thereto, (ii) all information and records with respect to the health status and whereabouts of each insured under a Keep Policy, (iii) all accounting records, including the accounting and bookkeeping records incident to the ownership, premium payments and receipts and distributions of proceeds with respect to each Keep Policy made to or received from the insurance companies that issued the Keep Policies, (iv) all documents and instruments executed and/or delivered by or to Seller, a Receivership Entity, each Keep Policy Investor and any Third Party Beneficiary, an insured, a viator or any other Person in respect of a Keep Policy, or the direct or indirect acquisition, ownership or disposition thereof by Seller, any Receivership Entity, Keep Policy Investor or any Third Party Beneficiary (collectively, the "Policy Files"), provided that, Policy Files shall not include any attorney-client or other privileged communication between the Receiver as Seller or any Receivership Entity and their respective attorneys or accountants.

viii.   Furthermore, the content of the Policy Files has necessarily evolved since Final Judgment in the Receivership Action for Maintenance of the Keep Policies by virtue of the Servicer's management of the Policy Files pursuant to the Servicing Agreement, and includes data that is in electronic form and stored on the Servicer's systems.  (DE 2809-14).

ix.   Accordingly, it is hereby ORDERED AND ADJUDGED that the Trustee is vested with all claims, options, privileges, right, title and interest in, to and under the Policy Files, free and clear of all Encumbrances, to include changes in the Policy Files since Final Judgment in the Receivership Action for Maintenance of the Keep Policies and all historical information with

respect thereto, including data pertaining to the Policy Files that is in electronic form and stored on the Servicer's systems.

2.    The Motion to Compel be **DENIED** to the extent that the Trustee seeks Injunctive Relief in the form of an Order compelling Litai Assets, LLC to provide the Trust with its data in a usable, industry standard format.

The Parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to file objections timely shall bar the Parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the Parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Fort Lauderdale, Florida, this 22nd day of February 2021.

**Jared M. Strauss**
**United States Magistrate Judge**

Copies furnished via CM/ECF to:

Hon. Federico A. Moreno

Counsel of record