UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60573-CIV-MORENO/STRAUSS

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MUTUAL BENEFITS CORP., *et al.*,

    Defendants.
_____/

### REPORT AND RECOMMENDATION TO DENY TRUSTEE'S MOTION TO MODIFY TRUST AGREEMENT OR FOR INSTRUCTIONS FROM THE COURT (DE 2852)

**THIS CAUSE** has come before me upon the Trustee's Motion to Modify Trust Agreement or For Instructions from the Court filed by Barry Mukamal, as Trustee (the "Trustee") of the Mutual Benefits Keep Policy Trust (the "Trust"). ("Motion to Modify"). (DE 2852). This matter has been referred to me by the District Court to take all necessary and proper action as required by law pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the United States District Court for the Southern District of Florida ("Referral"). (DE 2631). Acheron Capital, Ltd., in its capacity as the investment manager for Acheron Portfolio Trust, Avernus Portfolio Trust, Lorenzo Tonti 2006 Trust and STYX Portfolio Trust, (collectively, "Acheron") has filed a response and a sur-reply ("Sur-Reply"). (DE 2856; DE 2893). Litai Assets, LLC ("Litai"), as servicer for the Trust, has filed a response ("Litai's Response").[1] (DE 2861). Also, the Trustee has filed a reply

---

[1] On February 25, 2021, the Securities and Exchange Commission ("SEC") filed a second request for enlargement of time, until March 12, 2021, to respond to the Motion to Modify ("Second Request for Extension"). (DE 2872). The SEC required a brief additional extension to review materials it anticipated receiving from the Trustee on or about March 2, 2021. *Id.* I granted the Second Request for Extension. (DE 2873). However, the SEC did not file a response by the extended deadline nor did the SEC request any further extension of the deadline.

("Reply").[2] (DE 2885). Having carefully considered the record and being otherwise duly advised, it is respectfully **RECOMMENDED** that the Motion to Modify (DE 2852) be **DENIED** for the reasons set forth herein.

I.   **BACKGROUND**

This case arises from an enforcement action by the Securities and Exchange Commission in 2004 involving the fraudulent selling of fractional viaticated investment interests in life insurance policies. (DE 1). The entities involved were put into receivership, and Roberto Martinez was appointed as receiver (the "Receiver"). (DE 26). By 2009, the Receiver sought to sell the servicing business and transition the servicing of life insurance policies that investors desired to retain to private entities through formation of the Trust because the servicing of such policies would be required "for a longer period of time than the other remaining functions of the Receivership."[3] (DE 2266 at 5). Pursuant to this Court's order, the Receiver conducted a vote whereby investors in the life insurance policies voted to either: a) sell the policy; or b) retain the policy ("Keep Policies").[4] (DE 2291 at 3). On September 25, 2009, the Receiver executed with Barry Mukamal, as Trustee, the Mutual Benefits "Keep Policy" Trust Agreement ("Trust

---

[2] The Trustee argues in his Reply that neither Acheron nor Litai have standing to be heard on the Motion to Modify. (DE 2885 at 1-3). The Court is capable of identifying grounds for denying the motion without Acheron's and Litai's arguments. The responses and the Sur-Reply raise concerns, however, that the Court has determined are appropriate to consider and address regardless of any independent benefit to either Acheron or Litai. Therefore, I do not further discuss the Trustee's arguments pertaining to standing.

[3] The Court granted the Receiver's motion for discharge in September 2018. (DE 2517).

[4] The Trustee reported that, as of March 1, 2021, there remains 3,218 total policy interests being maintained by the Trust with a face value of approximately $238.6 million. (DE 2882-1 at 1). According to the Trustee, of the 3,218 total policy interests, the Trust is servicing 2,138 interests for victims of the original fraud. *Id.* Also, the Trustee reported that 1,294 total policies are still held by the Trust. *Id.*

Agreement") creating the Trust for the purpose of administering the Trust Assets, including the Keep Policies, for the benefit of the Keep Policy investors (the "KPIs").  (DE 2540 at 2; DE 2540-1 at § 2.2).

Several provisions of the Trust Agreement are relevant to the instant Motion to Modify.  First, section 6.5 of the Trust Agreement establishes limitations on the Trustee's compensation as follows:

> The Trustee shall receive compensation for services to be rendered and reimbursement of expenses from the Overpayment Balance.  *The Trustee's compensation shall be the greater of* (i) $1,500.00 per month; or (ii) *$395 per hour*, which the Trustee represents is currently not more than the usual hourly rate customarily charged by the Trustee for similar services; provided, however, that general or overhead expenses of the Trustee shall not be separately compensated from the Trust Assets.

(DE 2540-1 at § 6.5) (emphasis added).  Second, section 3 of the Trust Agreement empowers the Trustee to, among other things, "hire such [professionals] as are required by the business of the Trust (including, without limitation, professionals or professional firms with whom the Trustee may be associated or employed), and to delegate to such persons such powers and authorities as the duties of the Trustee permit."  Section 3 also grants authority to the Trustee "to pay counsel, accountants, appraisers, auditors and such other parties *reasonable compensation*."  *Id.* at § 3.1(a), (b)(xxi) (emphasis added).  Third, the Trust Agreement is "governed by and construed and enforced in accordance with the Laws of the State Florida" and broadly confers jurisdiction upon the Court for all matters related to the Trust Agreement unless subject matter jurisdiction is lacking.  *Id.* at §§ 7.1-7.2).  Fourth, the Trust Agreement provides, in section 9.4, that the Trustee may amend the Trust Agreement with approval of the Court.[5]  (DE 2540-1 at § 9.4).

---

[5] On December 14, 2009, the Court ordered that the Trust Agreement, the Servicing Agreement, and other related agreements facilitating the formation of the Trust, could be modified without further notice to the Court only if the modification was "for the purpose of fulfilling the intent of

3

The Court has ordered the Trustee to certify his compliance with the provision of the Trust Agreement governing his compensation.[6] (DE 2705 at 16). On January 14, 2021, the Trustee filed a notice of compliance ("Notice of Compliance") indicating that the Trustee's compensation "has exceeded the $395 per hour 'cap'" and proffered that his compensation exceeded the cap by year as follows:

| Year | Total in Excess of $395 / Hour |
|---|---|
| 2014 | $     63 |
| 2015 | $    813 |
| 2016 | $ 3,131 |
| 2017 | $    383 |
| 2018 | $ 1,249 |
| 2019 | $16,152 |
| 2020 | $33,372[7] |
| Total: | $55,163 |

(DE 2847). The Trustee further indicated that he has escrowed funds equaling this overpayment with his counsel pending action from the Court. (DE 2852 at 5). The Notice of Compliance included a request to modify the Trust Agreement to allow for the compensation the Trustee has received, and the Court directed the Trustee to make a separate, proper motion. (DE 2847; DE 2848). On January 21, 2021, the Trustee filed the subject Motion to Modify incorporating the

---

the Agreements and [did] not constitute a material modification of the Agreements." (DE 2367 at ¶16).

[6] On July 6, 2020, I issued a report and recommendation, adopted by the District Court, recommending that the Trustee certify his compliance with the subject provision regarding compensation. (DE 2705 at 11; DE 2824). I also recommended denying Acheron's motion for the Trustee to, *inter alia*, disclose his compensation because Acheron lacked standing due to not having established that it was a beneficiary of the Trust. (DE 2705 at 11; DE 2824).

[7] This amount excludes the months of July through December 2020 which were not billed to the Trust, and which amounts are being separately tracked by the Trustee pending resolution of the issues presented by this action.

Notice of Compliance. The Motion to Modify explicitly requests that the Court modify the terms of the Trust Agreement, retroactively, to allow for the Trustee's compensation to be set "at then-prevailing rates from the inception of the Trust Agreement." (DE 2852 at 3, 5). Alternatively, the Trustee requests direction regarding funds that have been escrowed with counsel pending resolution of the Motion to Modify and indicates that he will comply, if the Court orders, with instructions to reimburse the Trust. *Id.*

Notably, the Notice of Compliance included the following footnote:

> Since the inception of the Trust, the Trustee has identified one member of his firm to handle much of the day-to-day responsibilities of the Trust and to act as the Trustee's agent and delegate for purposes of the Trust's administration. The Trustee also has engaged KapilaMukamal and previously, Marcum LLP, to provide accounting services to the Trust. *The Trustee compensation* referenced in the Trustee's Certification *reflects the combined blended rate, on an annualized basis, of the Trustee and the Trustee's delegate*, but excludes other professionals engaged by the Trust.

(DE 2847 at n.4) (emphasis added). Thus, the Trustee's representation of the amount by which he has exceeded the compensation "cap" relies on the assumption that his method of considering the "combined blended rate" accords with the Trust Agreement. Therefore, I construe the Motion to Modify to include an implicit request to approve the Trustee utilizing a "blended rate" rather than his own hourly rate for purposes of compliance with § 6.5 of the Trust Agreement, which section sets forth *a cap on the Trustee's compensation*.

## II.  **LEGAL STANDARDS**

As this Court has previously determined, the Trust is governed by The Florida Trust Code. *See Sec. & Exch. Comm'n v. Mut. Benefits Corp.*, No. 04-60573-CIV, 2020 WL 7344652, at *2, n.5 (S.D. Fla. July 27, 2020) (citing Fla. Stat. § 736.0102 (stating that "[t]his chapter may be cited as 'The Florida Trust Code'")). Under The Florida Trust Code, compensation of a trustee is governed, in relevant part, by the following provisions:

5

    (1) If the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation that is reasonable under the circumstances.

    (2) If the terms of a trust specify the trustee's compensation, the trustee is entitled to be compensated as specified, but the court may allow more or less compensation if:

        (a) The duties of the trustee are substantially different from those contemplated when the trust was created; or

        (b) The compensation specified by the terms of the trust would be unreasonably low or high.

    (3) If the trustee has rendered other services in connection with the administration of the trust, the trustee shall also be allowed reasonable compensation for the other services rendered in addition to reasonable compensation as trustee.

Fla. Stat. § 736.0708(1)-(3).

### III.    <u>DISCUSSION</u>

I find that the Trustee's requests to modify the Trust Agreement are not reasonable or warranted. As to the Trustee's explicit request to retroactively raise the cap to "then-prevailing rates," there are several considerations that weigh against granting this relief.

First, the Trustee fails to offer sufficient justification for changing the terms of the compensation that he agreed to originally. Notwithstanding the Trustee's argument to the contrary, the Trustee had ample notice that his compensation as set forth in the Trust Agreement would endure for a significant period of time. (DE 2852 at 4). For example, the Trust was formed in 2009 for the very reason that the Receiver foresaw that the Keep Policies would require servicing beyond his tenure in managing the receivership. (DE 2266 at 5). Notably, the Court did not discharge the Receiver until 2018. (DE 2517). Also, the Servicing Agreement that the Trustee entered into in 2009 had an initial term of five (5) years with a provision for up to five (5) renewals of two (2) years each for a total "Term" of fifteen (15) years. (DE 2266-3 at 2-3). Arguably, the Trust Agreement would not have provided for such fifteen (15) year duration absent some reason

to believe it could be necessary. Therefore, I conclude that the Trustee had adequate notice that the rate of compensation specified in the Trust Agreement that he executed would be in place for a considerable number of years unless he took action to request, and justify, modifying the compensation *before exceeding* the limit specified in the agreement. Yet, the Trustee acknowledges exceeding the cap as far back as 2014 and for every year since 2014.[8] The fact that the Trustee waited so long to seek this relief, and now seeks to do so with retroactive effect to excuse his past practice, weighs heavily against granting that relief. Because I find that the Trustee had adequate notice of his compensation, including the potential duration of it, I conclude that it would be inappropriate for the Court to engage in "fixing" the noncompliance by granting the

---

[8] The Trustee reports that his own rate of compensation has exceeded the cap of $395 per hour since 2010. (DE 2885-1). I do not find, however, that the Trustee's neglect in this regard should trigger a forensic examination or audit of the Trustee's billing practices as Acheron suggests. (DE 2893 at ¶17). The chart that is attached to the Trustee's Reply clearly presents the number of hours that the Trustee charged for the periods reported and the Trustee's rate relative to those hours that the Trustee charged for administration of the Trust. (DE 2885-1). This is sufficient disclosure to indicate candor by the Trustee with respect to the issue of compliance with the limitations on his compensation as set forth in the Trust Agreement. Acheron's Sur-Reply makes clear that it desires more detailed reporting from the Trustee, which desire is related, at least in part, to other litigation proceedings between Acheron and the Trustee. (DE 2893 at n.3,5-8, ¶3). While it is unfortunate that the Trustee did not seek amendment of the compensation provision prior to exceeding it (which would have likely been approved for some period of the time at issue if timely sought and sufficiently justified), I do not find that the hourly rates that he charged were outrageous or so unreasonable as to warrant an audit of the Trustee's billing practices with respect to his billing of the Trust. Furthermore, the Trustee has "certifie[d] that he has conformed the Trust's financial disclosures provided to [KPI's] in accordance with the directions provided in the [Court's] Orders." (DE 2847 at 2-3). That Acheron has not been able to access these disclosures flows, at least in part, from the continued litigation between Acheron and the Trustee. The parties' mistrust of one another (as evidenced by other litigation; *see* DE 2835) is not grounds, however, for the Court to find that the Trustee lacks the competence or the qualities requisite for continued administration of the Trust. Furthermore, the Trustee's candor in reporting his noncompliance with the compensation limits in the Trust Agreement and his candor in providing the details for most of the history of the Trust with respect to his own hours and rates is reason for this Court to maintain confidence that the Trustee will continue to follow the Court's orders. Accordingly, I find no reason to recommend that the Court engage in detailed scrutiny of the Trustee's billing practices and address Acheron's request in this regard no further.

Trustee's request to change the Trust Agreement's terms to allow for "then-prevailing rates" rather than the $395 per hour cap.

Second, the belated request to increase the Trustee's compensation comes at a crucial juncture for the Trust and potentially imposes adverse consequences on KPIs. Indeed, the Trustee has recently decided to wind down the Trust because of a lack of resources to continue servicing the Keep Policies without significantly increased expense to the KPIs. (DE 2882 at 4-5). In particular, the Trustee reports that litigation expenses and Acheron's reduction of the prices that they are willing to pay for dispositions of forfeited policy interests along with a reduction in defaults of policy interests has accelerated the dissipation of the Trust's cash, which the Trustee now anticipates can only sustain the Trust's operation through this year-end.[9] (DE 2882 at 4-5). Therefore, even considering that the Trustee has an arguably legitimate reason for increasing his compensation rate going forward given how his work has changed in light of the significant litigation involving the Trust,[10] it is not prudent to further increase the dissipation of the Trust's

---

[9] The Trustee acknowledged at the March 19, 2021 Status Conference that he would be challenged to get to auction by the time the Trust's funds are depleted and has referenced a contingency plan for borrowing funds in connection with the liquidation process if necessary to prevent increasing administrative costs to the KPIs. (DE 2884); see also (DE 2903 at 4) (stating Acheron's contention that the initial notice to investors should include, among other things, "estimated costs of borrowing funds in connection with the liquidation process").

[10] The Trustee notes that, since 2018 in particular, Acheron and Litai have engaged in very time-consuming litigation with the Trust. (DE 2885 at 4). Litai takes issue with the Trustee's Motion to Modify on multiple grounds. (DE 2861). First, Litai's Response notes that the motion implicates its right to receive "the remaining balance of the Overpayment Balance" . . . unless [determined to be inadequate by the Trustee] to sustain the continued operations of the Trust." (DE 2861 at 2). Second, of relevance here, is that Litai argues, *inter alia*, that the Trustee does not explain how his duties are substantially different than originally contemplated in order to justify a modification of his compensation under the provisions of The Florida Trust Code. (DE 2861 at 4) (citing Fla. Stat. § 736.0708(2)(a)). I find, however, that the Trustee did explain that his duties have changed by referencing the significant level of litigation in which the Trustee has had to be involved. The litigation that has been ongoing between the Trustee, Acheron and Litai was not contemplated at the time the Trust was formed. For other reasons (including other reasons that

cash by increasing the amount that the Trustee can bill the Trust.[11]

Third, the Trustee's Motion to Modify provides no details whatsoever as to the specific rates of increase that he seeks. Rather, he requests that the Trust Agreement provide "that the Trustee's compensation shall [not be] more than the usual hourly rate charged by the Trustee for similar services."[12] (DE 2842 at 6; *see also* page 3 (proposing to modify § 6.5 of the Trust Agreement to state that the "Trustee's compensation shall be the greater of (i) $1,500.00 per month; or (ii) the usual hourly rate customarily charged by the Trustee for similar services")). It

---

Litai argues), however, I conclude that increasing the Trustee's compensation at this juncture is inappropriate. Therefore, I do not recommend increasing the Trustee's compensation on the basis of a change in the Trustee's duties.

[11] The Trustee argues in a footnote that he could have charged some of his services as "other" services given that he is a CPA and forensic accountant and impliedly provided such services to the Trust rather than only Trustee services. (DE 2852 at n.2). While the Court presumes this to be true, the fact is that the Trustee did not charge his services in this manner. For whatever reasons the Trustee had at the time, he chose to charge the services as Trustee services rather than "other" services. The Court relies upon the Trustee to make appropriate business decisions as to the classification of his compensation and to decide many other matters in the course of his fiduciary duties to the Trust. Thus, to the extent that the Trustee made past business judgments regarding the classification of work that was done for the Trust, I conclude that the Court should accept that the Trustee appropriately made those decisions at the time that they were made. Thus, I conclude that the Trustee should bear any consequences of those decisions.

[12] The Trustee attaches a chart to his Reply that reflects his individual billing rate for the years 2010 through 2020, which indicates rates between $406 per hour and $550 per hour during this period. (DE 2885-1). Arguably, the Court could construe these rates as the requested rates; however, the Trustee did not specifically request that the Court raise the limit on his compensation to these particular rates. Nor, for reasons previously stated, do I find that the Court should modify the Trust Agreement to raise the cap on the Trustee's compensation to these rates. I observe additionally that the chart indicates that, by using the services of a lower-cost delegate for many of the hours charged to the Trust, the Trustee was able to significantly lower the Trust's costs than if the Trustee had personally engaged in performing the delegated duties himself. The Court relies upon the Trustee to make business judgments regarding the delegation of duties and appropriate compensation of delegates. Therefore, to the extent that the Trustee made business judgments regarding the delegation of work to administer the Trust and the compensation for that work, I conclude that the Court should accept that the decisions were made appropriately at the time that the Trustee made them. Moreover, the Trustee has discretion to make these decisions and is empowered by the Trust Agreement to do so without detailed scrutiny by this Court in the absence of strong reason to engage in such scrutiny, which I do not find exists for reasons stated herein.

would not be appropriate for the Court to provide this type of "blanket" authorization for the Trustee to increase his compensation at his sole discretion without the Trustee disclosing the specific rates to be charged and providing appropriate support for those rates. Thus, even if other reasons were not present for denying an increase in the Trustee's compensation, here the Court lacks sufficient information and support regarding what compensation rates would be appropriate and why.

As to the Trustee's construed motion to allow him to use a "blended rate" as a substitute for his hourly rate in determining his compliance with the subject compensation provision, I find that the blended rate violates the terms of the Trust Agreement for a couple of reasons. First, the plain language of the Trust Agreement makes clear that the $395 per hour cap refers specifically to the Trustee. A separate provision of the Trust Agreement allows the Trustee to hire and compensate others at a "reasonable rate." Nothing in the Trust Agreement provides for the Trustee to "blend" the rate that he charges with others.

Second, blending the rates of the Trustee and his delegate is problematic in several ways. First, blending the rates that the Trustee and the delegate separately charge effectively increases the delegate's rate after the Trustee has made a determination as to a "reasonable" rate for the delegate. This artificial increase of the delegate's rate for purposes of calculating the Trustee's compliance with the limitation on his compensation is inconsistent with the Trustee's obligation to determine a "reasonable rate" for a delegate based upon the Trustee's evaluation of the delegate's qualifications. Further, to the extent that the Trustee is inappropriately raising the delegate's hourly rate, he is also improperly lowering his own rate by spreading the higher rate that he is charging over hours that he did not personally work. Thus, as the Trustee's Reply makes clear, the "blending" that the Trustee proposes has the effect of allowing the Trustee to charge

more than the $395 per hour cap for a significant number of hours that he has worked for the Trust. *See* DE 2885-1.

Second, the chart that the Trustee filed illustrating the calculation for blending rates does not address whether the Trustee adjusted the calculations for time that he and the delegate spent together on the same matter, e.g., attending court hearings. (DE 2885-1). To the extent that the Trustee's calculations include hours that both the Trustee and the delegate attended to matters at the same time, the calculations inappropriately decrease the blended rate that the Trustee asserts should apply for compliance purposes. This is so because the calculations would be double counting the hours that were spent simultaneously on a matter by both the Trustee and the delegate. The effect of double counting these hours is the spreading of costs over more hours than is proper to derive a rate lower than what should result.[13]

Thus, for the reasons explained above, I find that the Court should deny the Trustee's implicit request to engage in blending (and thus increasing) his hourly rate. Rather, I conclude that the Trustee should conform his hourly rate to the $395 per hour cap that is stated in § 6.5 of the Trust Agreement.

## IV.   CONCLUSION

Accordingly, I respectfully **RECOMMEND** as follows:

1. That the Trustee's Motion to Modify (DE 2852) be **DENIED;**

---

[13] An example of possible double counting is as follows: the Trustee works two hours at $500 per hour and the delegate works three hours at $200 per hour, where one of the hours represents time that both worked together on a matter. Dividing the total bill of $1,600 by five hours yields a "blended" rate of $320.00 per hour. The appropriate charge, however, would be $400.00 per hour because the hour that both worked on the same matter would only be counted once ($1,600 divided by 4 hours).

2. That the Trustee be **ORDERED to reimburse** the Trust for the **$55,163.00** that the Trustee's Motion to Modify identifies as being held in escrow by his counsel;

3. That the Trustee be **ORDERED** to conform his compensation to the $395 per hour cap limitation set forth in the Trust Agreement for the hours that he personally has charged the Trust and to reimburse the Trust for the appropriate amount that he has charged the Trust in excess of the $395 per hour cap within ninety (90) days of the District Court's adoption of this report and recommendation; and

4. That the Trustee be **ORDERED** to promptly thereafter file a notice of compliance with this Court.

The Parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to file objections timely shall bar the Parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the Parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Fort Lauderdale, Florida, this 18th day of April 2021.

Jared M. Strauss
United States Magistrate Judge

Copies furnished via CM/ECF to:

Hon. Federico A. Moreno

Counsel of record