# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60573-CIV-MORENO/STRAUSS

**SECURITIES AND EXCHANGE COMMISSION**,

    Plaintiff,

v.

**MUTUAL BENEFITS CORP.**, *et al.*,

    Defendants.
_____/

## ORDER DENYING INVESTORS' MOTION FOR ORDER REQUIRING COURT'S PRE-APPROVAL OF FUTURE PAYMENTS TO TRUSTEE ("MOTION FOR PRE-APPROVAL") (DE 2935) AND INVESTORS' MOTION FOR ORDER REQUIRING TRUSTEE TO FILE COMMUNICATIONS FROM INVESTORS ("MOTION FOR TRUSTEE TO FILE") (DE 2950)[1]

**THIS CAUSE** is before me upon the Motion for Pre-Approval (DE 2935) and the Motion for Trustee to File (DE 2950) made by Jonathan J. Majers, Craig Feltheim, and Janet Feltheim, Investors (the "Investors") in the Mutual Benefits Keep Policy Trust (the "Trust"). This matter has been referred to me by the District Court to take all necessary and proper action as required by law pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the United States District Court for the Southern District of Florida ("Referral"). (DE 2631). Barry Mukamal, as Trustee (the "Trustee") of the Trust has responded to the Motion for Pre-Approval ("Response to Motion for Pre-Approval") (DE 2943), and the Investors have replied ("Reply to Motion for Pre-Approval") (DE 2945). The Trustee has also responded to the Motion for Trustee to File ("Response to Motion

---

[1] The Court construes the Motions as motions for non-dispositive relief because they seek to compel conduct of the Trustee without a legal basis and do not waive or deny any rights of investors in, and beneficiaries to, the Trust.

for Trustee to File") (DE 2955). The Investors have not replied to the Motion for Trustee to File and the time to do so has now passed. I have carefully considered the motions, the responses, the reply and the record, and I am otherwise duly advised. For the reasons stated herein, the Motion for Pre-Approval (DE 2935) and the Motion for Trustee to File (DE 2950) are **DENIED**.

I. **BACKGROUND**

In 2004, the Securities and Exchange Commission commenced an enforcement action against Mutual Benefits Corporation and other Defendants for fraudulently selling fractional viaticated investment interests in life insurance policies. (DE 1). *See also SEC v. Mut. Benefits Corp.*, 408 F.3d 737, 738 (11th Cir. 2005).[2] The entities involved were put into receivership, and Roberto Martinez was appointed as receiver (the "Receiver"). (DE 26). The Receiver reported in June 2009 that, pursuant to Court approval, investors in the life insurance policies[3] had voted to either: a) sell the policy; or b) retain the policy ("Keep Policies").[4] (DE 2291 at 3). The Receiver

---

[2]

> A viatical settlement is a transaction in which a terminally ill insured sells the benefits of his life insurance policy to a third party in return for a lump-sum cash payment equal to a percentage of the policy's face value. The purchaser of the viatical settlement realizes a profit if, when the insured dies, the policy benefits paid are greater than the purchase price, adjusted for time value. Thus, in purchasing a viatical settlement, it is of paramount importance that an accurate determination be made of the insured's expected date of death. If the insured lives longer than expected, the purchaser of the policy will realize a reduced return, or may lose money on the investment.

*Id.*

[3] Investors in policies who were victims of the fraud are referenced as Keep Policy Investors or KPIs.

[4] Approximately 3,138 policies with a face value of $383,580,782 (or 27% of the total) were designated to be sold, and approximately 3,037 policies with a face value of approximately $1,054,421,049 (or 73% of the total) were designated to be retained by investors (the Keep Policies). *Id.* Acheron Capital, Ltd. ("Acheron"), the investment advisor for a group of funds, began purchasing fractional interests in undersubscribed policies in 2009. (DE 2925 at 9:16-20).

also requested, and the Court approved, the creation of a trust to "provide for the continued maintenance and processing of the Keep Policies in accordance with the directives of this Court." (DE 2291 at 5-6, 8; DE 2322). Thus, on September 25, 2009, the Receiver and the Trustee executed the Mutual Benefits "Keep Policy" Trust Agreement (the "Trust Agreement"). (DE 2540 at 2; DE 2540-1).[5]

Section 7 of the Trust Agreement includes provisions for this Court to address disputes related to the Trust Agreement in accordance with Florida law as follows:

> Section 7.1 <u>Governing Law</u>. This Trust Agreement shall be governed by and construed and enforced in accordance with the Laws of the State of Florida, without regard to any choice-of-law rules thereof which might apply the Laws of any other jurisdiction.
>
> Section 7.2 <u>Jurisdiction and Venue</u>. The Court shall have jurisdiction of all matters related to this Trust Agreement and all Actions with respect to this Trust Agreement, including without limitation the determination of all controversies and disputes arising under or in connection with the Trust Agreement, unless the Court shall not have subject matter jurisdiction in respect thereof, in which case such legal action, suit or proceeding, as the case may be, shall be brought in the courts of the State of Florida, sitting in Miami-Dade County.

*Id.* at §§ 7.1, 7.2. Further, the Trust Agreement grants broad powers to the Trustee to take all actions necessary in his judgment to fulfill the purposes of the Trust, including those which are

---

Acheron's purchases of defaulting interests and payment of premiums have allowed policies to continue rather than lapse. (DE 2925 at 10:16-25). As of July 1, 2021, the Trustee reported that the Trust is servicing 982 policies with a total face value of $202,093,294, of which 2 policies are 100% owned by Acheron. (DE 2956-1). Additionally, of the 2,755 total policy interests, the Trust is servicing 2,024 interests for the original victims of the fraud and 731 interests for Acheron. *Id.* Acheron's interests represent $122,761,252 or 60.74% of the total face value of policy interests being serviced by the Trust. *Id.*

[5] The Trust is thus governed by the provisions of The Florida Trust Code. *See Demircan v. Mikhaylov*, No. 3D18-1684, 2020 WL 2550067, at *4 (Fla. 3rd DCA May 20, 2020) (stating that The Florida Trust Code was first enacted in 2007 and applies to "all judicial proceedings concerning trusts commenced on or after July 1, 2007"); *see also* Fla. Stat. § 736.0102 (stating that "[t]his chapter may be cited as 'The Florida Trust Code'").

3

enumerated in Section 3.1. (DE 2540-1 at § 3.1). In this regard, the Trust Agreement specifically provides that:

> Subject to the limitations set forth in this Trust Agreement,[6] the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 3.1, any power reasonably incidental thereto, and any trust power now or hereafter permitted under the laws of the State of Florida.

(DE 2540-1 at § 3.1(a)). Section 3.1(b) specifies that, without limiting the generality of § 3.1(a), the Trustee has certain specified powers and duties relating to maintenance and processing of the Keep Policies. *Id.* at § 3.1(b).

On March 15, 2021, the Trustee provided notice that the Trust lacked resources to continue operating the Trust without a substantial increase in costs to investors and, therefore, reported that wind down of the Trust should occur by the fourth quarter of 2021. (DE 2882 at 4-5). On April 21, 2021, I issued an Order Granting Trustee's Motion to Approve Proposed Final Revised Notice Regarding Trust Wind Down [("Notice")] (DE 2900). (DE 2917). The purpose of the Notice was to provide "preliminary information to the KPIs regarding the sale of Keep Policies as part of a wind down of the Trust." *Id.* at 7. Specifically, the Notice informed investors that objections to the wind down of the Trust should be communicated to the Trustee first, through the Trustee's counsel's designated contact, in order for the Trust to attempt to address and resolve objections. (DE 2900-1 at 5). Additionally, the Notice stated: "[t]he Trustee will regularly report to the Court as to any potential objections and efforts to resolve them." *Id.* The Notice also informed investors that, if they are unable to resolve their objections after discussing it with the contact provided in

---

[6] An example of a limitation is that § 4.1 restricts the Trustee's investment of monies held by the Trust to certain types of low risk, liquid investments. (DE 2540-1 at § 4.1).

4

the Notice, they may file objections with the Court through the Clerk of the Court (address provided).[7] *Id.*

On June 15, 2021, consistent with the Court's instruction for the Trustee to file monthly status reports, the Trustee reported on, among other topics, communications with Keep Policy Investors. (DE 2947). Specifically, the Trustee reported that that he had sent the Notice to approximately 2,000 investors and had responded to approximately one hundred (100) inquiries as a result of sending of the Notice. *Id.* at 2. Furthermore, the Trustee reported that he updated the "Frequently Asked Questions" section of the Trust's website to address common inquiries from investors. *Id.* The Trustee included a section titled "Communication with Keep Policy Investors" and reported that most inquiries sought general information, e.g., an explanation of the Notice. *Id.* at 3-4. The Trustee also reported that several investors had inquired, among other things, about the sale process, including questions as to how much they will receive and how the sales proceeds will be allocated. *Id.* In addition, the Trustee stated that "[a]pproximately fifteen investors . . . expressed their desire to retain their policies if possible, and/or their opposition to a sale of the policies." *Id.* at 4.

## II. THE MOTIONS

### A. Motion for Pre-Approval

The Motion for Pre-Approval seeks to have the Court pre-approve any payments that the Trustee makes to himself or his firm "until [the Trustee's] 'enhanced oversight' [of Litai Assets

---

[7] On April 28, 2021, Craig and Janet Feltheim filed a letter objecting to the sale of their policy interests. (DE 2920). The Clerk of the Court stamped the letter as received on April 27, 2021. *Id.* The thrust of the Feltheims' objection is that they have paid more than $100,000.00 in fees and premiums and want the opportunity to hold their investments until they mature. *Id.* Following the filing of the Feltheim's objection letter, counsel for Mr. Majers, and the Feltheims filed a notice of appearance. (DE 2921). As of July 12, 2021, no other objection letters have been filed nor have attorney appearances been filed on behalf of any other Keep Policy Investors.

LLC ("Litai"), the Trust's servicer] can be investigated and fully understood."[8] (DE 2935 at 7). As grounds for asking the Court to impose such a requirement, the motion asserts that: (1) the Trustee has a conflict of interest; (2) that payments to the Trustee and his accounting firm have been "exorbitant"; and (3) that the Trustee has not provided, at least not historically, sufficient records regarding his compensation. (DE 2935).

The Trustee responds generally that the Investors cite no legal authority for their requested relief. (DE 2943 at 1). Specifically, with respect to grounds (1) and (2), the Trustee responds that fulfilling his fiduciary obligations required him to perform additional oversight of Litai and that the Trust Agreement and the Florida Trust Code expressly authorize him to use reasonable business judgement to employ his own firm to perform services. (DE 2943 at 1-5). With respect to ground (3), the Trustee responds that he has provided the financial reporting that was directed by the Court. *Id.* at 5-8.

### B. Motion for Trustee to File

The Motion for Trustee to File requests "that the Court instruct the Trustee to file communications the Trustee has received from the Keep Policy Investors in connection with the Notice." (DE 2590 at 2). The Trustee responds that the motion should be denied because: (1) the Investors did not comply with the conferral requirements mandated by Local Rule 7.1(a)(3); (2) there is no legal basis set forth for the requested relief; and (3) "there is no sound reason to

---

[8] The subject motion also states that Acheron, in recent filings, "set out several facts regarding the Trustee's failure to adequately disclose the compensation that the Trustee and his accounting firm have received from the Trust." *Id.* at 1. The motion incorporates "the factual allegations set out in Acheron's Motion for Order Directing Disclosure of Trustee's Fees and Expenses and for Audit of Trust Operation (D.E. 2580), and in Acheron's Objections to Magistrate's Report & Recommendation of Trustee's Motion to Modify Trust Agreement (D.E. 2924)." The motion, however, does not specify the particular facts from Acheron's filings upon which the Investors are relying to support their request for the Court to pre-approve payments to the Trustee or his accounting firm nor do I find that any facts from those filings justify the requested relief.

6

make the Court's docket the repository for every communication between the Trust and the Keep Policy Investors regarding the . . . Notice." (DE 2955 at 2-3).

### III. LEGAL STANDARDS

Pursuant to Local Rule 7.1(a)(1), "[e]very motion when filed and served shall incorporate a memorandum of law *citing supporting authorities*," except in circumstances not applicable here. Local Rule 7.1(a)(1) of the Local Rules of the United States District Court for the Southern District of Florida (emphasis added). "[L]ocal rules generally reflect the courts' traditional 'authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Reese v. Herbert*, 527 F.3d 1253, 1267–68 (11th Cir. 2008). Citing no legal basis for a motion and violating Local Rules are grounds to deny motions. *Warner v. CBRE Inc.*, No. 13-CV-80055, 2013 WL 12084300, at *1 (S.D. Fla. June 27, 2013) (citing *Cheshire v. Bank of Am., NA*, 351 F. App'x. 386, 388 (11th Cir. 2009) (holding that "a valid local rule has the force of law") and *Cont'l Technical Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) (holding that "[a]n argument not made is waived")).

"'Where discretion is conferred upon [a] trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion.'" *Sarasota Bank & Tr. Co. v. Rietz*, 297 So. 2d 91, 93 (Fla. 2d DCA 1974) (quoting Restatement (Second) of Trusts § 187 (1959)). Section 187 of the Restatement (Second) of Trusts states in relevant part:

> In determining the question whether the trustee is guilty of an abuse of discretion in exercising or failing to exercise a power, the following circumstances may be relevant: (1) the extent of the discretion conferred upon the trustee by the terms of the trust; (2) the purposes of the trust; (3) the nature of the power; (4) the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (5) the motives of the trustee in exercising or refraining from exercising the power; (6) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries.

> . . .
>
> If discretion is conferred upon the trustee in the exercise of a power, the court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of a reasonable judgment. The mere fact that if the discretion had been conferred upon the court, the court would have exercised the power differently, is not a sufficient reason for interfering with the exercise of the power by the trustee.

Restatement (Second) of Trusts § 187(d), (e) (1959).

## IV.    DISCUSSION

As explained further below, I find no basis to grant the Investors' requested relief. The Trustee correctly notes that the Investors cite no legal authority for the relief they request and, therefore, violate the local rules. (DE 2943 at 1; DE 2955 at 1-2). Although the Investors' motions may be denied for failure to comply with the Local Rules, for the sake of thoroughness, I proceed by reviewing the motions as well as the relief that they seek.

### A.    Motion for Pre-Approval

The Motion for Pre-Approval essentially takes issue with the Trustee's additional efforts to perform oversight on Litai, the Trust's servicer. (DE 2935 at 7). First, the motion alleges a conflict of interest or, at a minimum, a waste of Trust assets due to "payments by the Trustee to his own firm of well over one million dollars over several years for enhanced oversight [of Litai]." *Id.* at 5. Second, the Investors label the payments to the Trustee and his accounting firm for the enhanced oversight work they performed "exorbitant." *Id.* at 7. Third, the Investors are critical of the Trustee's financial disclosures, although it is unclear whether financial disclosures remain at issue because the Investors requested additional records from the Trustee regarding "payments to

8

the Trustee and/or his agents."[9] (DE 2935 at 7). In sum, the Investors imply, without specifically alleging, that the Trustee abused his discretion by authorizing payments to himself and his accounting firm for enhanced oversight of the Trust's servicer. *Id.*

The Trustee responds as to ground one – the conflict of interest – by explaining that he is responsible for monitoring and servicing the servicer in the performance of the servicer's obligations. (DE 2943 at 2). Additionally, the Trustee responds as to the related ground two – that the fees charged by the Trustee's firm were exorbitant – that the Investors "simply argue, without any context or support, that the fees are excessive." *Id.* at 5-6. I address both grounds below.

Neither the allegation that the Trustee has a conflict of interest in engaging his firm to perform additional oversight of Litai nor the allegation that the Trustee's fees are excessive provide grounds for the Investors' requested relief. The Trust Agreement explicitly provides for the Trustee "to monitor the performance of the Servicer."[10] (DE 2540-1 at § 3.1(b)(iii)). Furthermore, the Trust Agreement explicitly empowers the Trustee to hire professionals – including firms affiliated with the Trustee – "as the Trustee, in his discretion, deems advisable [or] necessary in order to carry out the terms of [the] Trust Agreement." *Id.* at § 3.1(b)(xx).

---

[9] The Investors' Reply, filed on June 8, 2021, states that counsel for the Trustee "has simply ignored . . . [the Investors'] requests with silence." (DE 2945 at 4). Further, the Investors indicate that they welcome and accept the Trustee's offer to provide *future* billings as to the Trust's oversight work; however, the Investors still request information about *past* oversight work. *Id.* The Investors note that the Trustee's counsel has prevented the Securities and Exchange Commission ("SEC"), who obtained records from the Trustee, from providing those records to the Investors "on the basis of confidentiality." *Id.* at 3-4.

[10] The Trustee also contends that his counsel "has already conferred with Investors' counsel to describe and explain the nature of the services that have been performed on behalf of the Trust and would be glad – without waiving applicable privileges – to do so further." (DE 2943 at 6).

9

As the Trustee further explains, the context for the enhanced oversight of Litai involves operations of the Trust that are quite significant in breadth and scope. Litai, as servicer, is responsible for collecting and disbursing tens of millions of dollars of death benefits each year. (DE 2943 at 2, n.4). As further evidence of the significant scope of services that Litai provides, the Trustee reports that Litai has been paid close to $44.2 million for its services from inception through 2020 year-end. *Id.* Litai also provides Disposition Services related to the sale of defaulted policy interests to Acheron. *See* 2540-1 at ¶ 3.1(b)(ix); DE 2943 at 2-3. Given the Trustee's knowledge about a relationship between Litai and Acheron, the Trustee's inability to obtain all disclosures that he sought regarding this relationship, and the Trustee's inability to obtain all of the Trust's data from Litai for further analysis, the Trustee explains that he engaged his firm to perform additional oversight of Litai. (DE 2943 at 3). The Trustee asserts that the purpose of the oversight effort is to ensure that the servicing operations "do not negatively impact the Keep Policy Investors." *Id.* Thus, I conclude that the Trustee provides reasons for the enhanced oversight that are reasonable and consistent with his fiduciary obligations.

While the Investors posit that the subject oversight work was predicated on allegations of an improper relationship between Litai and Acheron, which allegations have not been substantiated, that is not the whole of the story. (DE 2935 at 4-5; DE 2945 at 2-3). Rather, the Trustee explains that he has identified and addressed a number of concerns, i.e., Litai billing administrative fees to KPIs upon policy maturities and issues pertaining to the collection and application of cash to satisfy premium obligations for Keep Policies. *Id.* at 3.

Also, the Trustee has surfaced other reasons through the course of the instant post-judgement proceedings for his decision to engage in enhanced oversight of Litai. For example, the Trustee has reported, when making a motion to compel Litai to provide the Trust with its data,

that he determined that Litai handled a sale of defaulted policy interests to Acheron in August 2017, which included interests in policies that had already matured. (DE 2653 at ¶¶ 3-5). Indeed, the Trustee described that Litai's duties include determining when a policy matures. *Id.* at ¶ 3. The determination of a policy's maturity is significant to the interests of KPIs. In a sale of defaulted policy interests to Acheron in August 2017, where three of the underlying policies had matured prior to the sale, Acheron would have paid $91,921 for $491,000 in payout on matured policies – a windfall of over $399,000. *Id.* The Trustee, however, directed Litai to amend the sale to remove the sale of matured policy interests.[11] *Id.* at ¶ 5. Accordingly, for the above reasons, I find that the Trustee provides sufficient explanation for exercising his discretion to perform enhanced oversight of Litai, consistent with his fiduciary duty.

The Investors additionally posit that: (1) the Trustee did not consult with, or receive approval from, the beneficiaries or the Court for the oversight work; (2) Litai is contractually obligated to provide accounting services without additional compensation; and (3) that any conflict of interest could have been avoided by the Trustee engaging the services of a third-party accountant or providing adequate and timely disclosures to investors. (DE 2935 at 2-3; DE 2945 at 2). As to the Investor's first assertion, the Trust Agreement confers discretion upon the Trustee to decide whether to engage in oversight work related to Litai's performance as servicer. (DE 2940-1 at § 3.1). Therefore, the Trustee is not required to seek approval from the Trust's beneficiaries or from the Court prior to engaging in such effort. Secondly, as to Litai being contractually obligated to provide accounting services, it would be inappropriate for Litai to provide services related to monitoring its own performance.

---

[11] The Trustee made no assertion that such inappropriate transfers of already-matured policy interests were intentional. In fact, the Trustee stated that "whether inadvertent or not," such transfers "served to heighten [his] concerns and led to the Trustee seeking an increased level of oversight over Litai's practices." (DE 2653 at ¶ 7).

11

Thirdly, as the Trustee correctly argues, the Florida Trust Code and the Trust Agreement explicitly allow for the Trustee to employ his own firm. (DE 2943 at 4). The Trustee also asserts that his firm, KapilaMukamal, is a recognized industry leader in fiduciary services and forensic accounting. *Id.* at 4-5. Therefore, the Trustee argues that his firm has appropriate expertise to provide the oversight services sought by the Trustee, and the firm's personnel have institutional knowledge specific to the Trust. *Id.* The Trustee argues that an outside accountant would be more expensive to employ because of the need to recreate the experience garnered by his own firm. *Id.* at 5. Thus, the Trustee contends that he used his business judgment reasonably to employ his own firm to provide enhanced oversight over Litai. *Id.*

Moreover, even if the Investors had articulated a legal basis upon which the Court could require pre-approval the Trustee's expenditures upon a finding that such expenditures have been "exorbitant," the Trustee is correct that the Investors have provided no context within which the Court could conclude that those expenditures have been excessive. The Investors provide no standard "by which the reasonableness of [the Trustee's payments to his firm] can be judged." Restatement (Second) of Trusts § 187(d) (1959). Indeed, the Investors assert the payments are exorbitant by simply presenting a single, large figure, aggregating several years of work, without considering the payments on a yearly basis. Nor do the Investors present any context regarding what the cost of such services would likely be if performed by an independent third party – a necessary piece of information for discerning whether billings are excessive. The Trustee, on the other hand, sufficiently explains why his own firm was uniquely suited to provide the subject oversight services in an efficient manner. Therefore, I find that the Trustee provided a reasonable explanation for exercising his discretion to employ his own firm for the subject enhanced oversight

and find no basis, including allegations of excessive cost, for determining that the Trustee abused his discretion in this regard. *See* Restatement (Second) of Trusts § 187(d), (e) (1959).

Accordingly, to the extent that the Investors allege that the Trustee abused his discretion, by engaging in enhanced oversight of Litai and using his own accounting firm to perform these services, I find the allegation to lack merit. Indeed, the Trustee provides sufficient explanation for why an expanded engagement of his firm to review the servicer's operations was necessary and efficiently accomplished to ensure no negative impact to Keep Policy Investors from those servicing operations. In sum, considering all of the circumstances that may be relevant to the question of the Trustee's abusing his discretion, I conclude that the court should not interfere here with the Trustee's exercise of his discretion because there is no indication that the Trustee has "act[ed] dishonestly, or with an improper even though not a dishonest motive, or [has] fail[ed] to use his judgment, or [has] act[ed] beyond the bounds of a reasonable judgment." Restatement (Second) of Trusts § 187(e). Nor do I find otherwise that the Investors' conflict of interest or excessive fees arguments warrant the Court pre-approving payments to the Trustee or the Trustee's accounting firm.

As to ground three – inadequate financial disclosures – the Trustee correctly argues that he has complied with the Court's orders to provide additional financial reporting beyond that required by the Trust Agreement. (DE 2953 at 5-6). The Trustee also correctly notes the Court's "finding that the Trustee's reporting 'clearly presents the number of hours that the Trustee charged for the periods reported and the Trustee's rate relative to those hours that the Trustee charged for administration of the Trust." *Id.* at 5 (citing DE 2912 at 7, n.8). While the Investors request the information that the Trust provided to the SEC, they do not fully explain why such records are necessary. *See* DE 2935 at 6 (stating that the records were requested to understand the

13

compensation paid to the Trustee separately from his firm or agents "and other issues of concern").[12] The investors cite section 736.0813, Florida Statutes, that directs the Trustee "upon reasonable request, . . . to provide a qualified beneficiary with relevant information about . . . the particulars relating to administration." As stated previously, the status of the Investors' request for additional information is unknown. However, given that the Trustee has expressed a willingness to further confer and to provide information *going forward* "subject to execution of an confidentiality and non-disclosure agreement," the Court encourages the parties to further confer to come to an agreement before seeking further intervention of the Court with respect to financial disclosures. (DE 2943 at 6). Nonetheless, the Investors' request for additional financial disclosure from the Trustee does not provide grounds for the Court to order the Trustee to file fee applications and obtain prior Court approval before paying any fees or expenses to himself or his firm. Accordingly, for all of the reasons previously stated, the Investors Motion for Pre-Approval fails to provide a basis for the Court to grant the requested relief.

    **B.**    <u>**Motion for Trustee to File**</u>

The Investors seek an order instructing the Trustee to file communications he has received from KPIs as a result of sending the Notice.[13] (DE 2950). As the Trustee correctly notes, the Investors cite no legal basis for their requested relief. (DE 2955 at 1-2).

---

[12] The Investors contend that "[i]f the Trustee received individual distributions from his firm from funds derived from the Trust, such individual distributions would constitute additional payments to the Trustee in excess of his authorized hourly rate of $395 per hour." (DE 2935 at 6). The Investors, however, are incorrect. The Trust Agreement specifically provides for the Trustee to employ his own firm and to pay the firm "reasonable compensation." (DE 2540-1 at § 3.1(b)(xx), (xxi)). Nothing in the Trust Agreement suggests that profits that accrue to the Trustee from the operations of his firm should be considered in determining the hourly rate that the Trustee charges for his individual services to the Trust.

[13] As an alternative, the Investors request that the Court order the Trustee to redact any information giving rise to privacy concerns and file all written communications as an addendum to the Trustee's status reports. (DE 2955 at 2).

I conclude that there is no basis to grant the requested relief. Certainly, the Investors cite no legal authority for the Court to order the relief they request, and I otherwise find no basis to grant the relief. As the Trustee argues, there is no reason to require the Court's docket to become even more expanded in this case by the filing of the subject communications. (DE 2955 at 2). Additionally, as the Investors themselves observe, the Trustee is already summarizing communications from KPIs in his monthly status reports. (DE 2950 at 1-2). Furthermore, the Investors provide no grounds for the innuendo that the Trustee is not accurately or completely summarizing those communications. *Id.* at 1-3.

Moreover, the Court received extensive briefing and argument on the Notice, after which, the Court specifically directed that the Trustee, in conjunction with his counsel, would undertake an initial effort to address KPIs concerns and questions. (DE 2890; DE 2891; DE 2895; DE 2899; DE 2900; DE 2903; DE 2905; DE 2906; DE 2908; DE 2909; DE 2917). The Notice clearly provides direction as to how KPIs may file unresolved objections following conferral with the Trustee's contact. (DE 2900-1 at 5). Thus, the procedure for KPIs to file objections, as presently set forth, is sufficient to provide the KPIs with access to the Court and is also sufficient, along with the Trustee's monthly status reports, to appropriately apprise the Court regarding the Trustee's communications with KPIs resulting from the Notice. Accordingly, I find no reason, legal or otherwise, to order the Trustee to file all communications with KPIs that pertain to the Notice.

## V.     CONCLUSION

For the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that the Motion for Pre-Approval (DE 2935) and the Motion for Trustee to File (DE 2950) are **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 18th day of July 2021.

Jared M. Strauss<br>
United States Magistrate Judge

Copies furnished via CM/ECF to:

Counsel of record